J. JOSEPH NUGENT, *Atty. Gen., ex rel.* IRVING H. BECK *vs.*

WILLIAM H. LEYS *et al.*

MARCH 26, 1959.

PRESENT: Condon, C.J., Roberts, Paolino and Powers, JJ.

Powers, J.   This is a petition for a writ of mandamus brought by the attorney general at the relation of the city manager of the city of Newport against the councilmen of said city praying that the respondents be commanded to convene on a day certain as the city council and remove the purported suspension of the relator from his office of city manager, reinstate him to his office, and for such other and further relief as the court may deem just and right or, in the alternative, to show cause, if any they have, why the petitioner's prayers should not be granted.

The petition also contained a prayer for a restraining order enjoining respondents from proceeding to consider and adopt a final resolution to remove the relator from his office as city manager.   On December 5, 1958 we granted the

prayer for a restraining order and issued an alternative writ of mandamus, returnable January 5, 1959, ordering respondents to show cause, if any they had, why petitioner's prayers should not be granted.

The allegations in the petition are not disputed. In November 1952 the electors of the city of Newport adopted a charter providing for a council-manager form of government. Thereafter the relator Irving H. Beck was engaged by the city council to act as manager for the city by an agreement executed May 14, 1956, the pertinent provisions of which read as follows:

> "That for and in consideration of salary payments hereinafter mentioned to be made by the City, Irving H. Beck agrees to act as City Manager for said City and to carry out to the best of his ability all the duties imposed upon him by the Charter of the City of Newport, and such other duties as the Council, from time to time, may require of him.
>
> \* \* \*
>
> "It is understood and agreed that this contract shall be subject to all the provisions of the Charter of the City of Newport and to any amendments thereto.
>
> "This agreement is for an indefinite term and may be terminated by Irving H. Beck upon the giving of notice, in writing, to the Council at least fifteen days before, but not more than thirty days before the effective date of said notice of termination.
>
> "This contract may be terminated by the City of Newport, acting through the Council, by following the removal provisions of the City Charter, and it is understood and agreed that the word 'reasons' as used in Section 5-2 of the Charter means, among other things, that the City Manager has lost the confidence of the majority of the Council.
>
> "It is further understood and agreed that if at any time the Manager is suspended and he requests an opportunity to be heard at a meeting of the Council, such meeting is a legislative act of the Council and not an administrative one."

Chapter V of the city charter, pursuant to the provisions under which relator was engaged, provides:

"Sec. 5-1—Engagement. The council is authorized and directed to enter into an agreement, for such term as the council may specify, for the engagement of a person selected on the basis of his executive and administrative qualifications and his experience in and knowledge of generally accepted practices in municipal administration to act as city manager. The relationship between the city and the city manager shall be contractual and not that between a municipality and a civil officer."

The relator entered into his duties on July 1, 1956 and continued to act as city manager until October 30, 1958 when, at a regular meeting, the respondents, acting in their capacity as councilmen, adopted the following preliminary resolution suspending the relator from office:

"Be It Resolved: That Irving H. Beck be, and he is hereby removed as City Manager of said City of Newport, effective December 5, 1958, and

"Be It Further Resolved, that the Council of the City of Newport, County of Newport, State of Rhode Island, herewith and hereby adopts this Preliminary Resolution as authorized by Section 5-2 of the Charter of said City that Irving H. Beck be, and he is hereby removed as City Manager of said City for the following reasons that he has

"1. failed to exercise sound and competent judgment in City affairs,

"2. failed to make efficient and correct use of the facilities and equipment of the City,

"3. not exercised organizational leadership,

"4. handled public relations in a faulty and improper manner,

"5. not at any time maintained a proper professional attitude,

"6. not been tactful in his dealings with employees of the City and with the public,

"7. failed to secure and keep the respect and support of subordinates,

"8. not exhibited leadership ability,

"9. persisted in coming into public conflict with the Council on controversial issues,

"10. failed to emphasize courteous and friendly service to the public,

"11. not been and has failed to be fair and impartial in all matters pertaining to appointments, pay adjustments, promotions and discipline in the municipal service,

"12. failed to determine with dispatch major problems confronting the City; and

"Be It Further Resolved, that Irving H. Beck be, and he is hereby suspended from duty as City Manager, effective immediately as authorized by the provisions of said Section 5-2, and

"Be It Further Resolved, that the City of Newport shall pay to Irving H. Beck, forthwith, any unpaid balance of his salary and his salary for the next three (3) calendar months."

Section 5-2 of the charter provides:

"Removal. The manager may be removed by a majority vote of all the members of the council. At least thirty (30) days before such removal shall become effective, the council shall adopt a preliminary resolution stating the reasons for his removal. The manager may reply in writing and may request an opportunity to be heard at a meeting of the council which shall be held not earlier than twenty (20) days nor later than thirty (30) days after the filing of such request.

"After such hearing of the council, if one be requested, and after full consideration, the council may adopt a final resolution of removal. By the preliminary resolution the council may suspend the manager from duty but shall cause to be paid to him forthwith any unpaid balance of his salary and his salary for the next three calendar months following adoption of the preliminary resolution, but no such payment shall be made if his removal is for any reason involving his integrity or moral turpitude."

It is obvious from a reading of the reasons stated in that resolution of removal that there is no question here involving moral turpitude or the integrity of the relator.

On November 3, 1958 the relator, in accordance with the provisions of sec. 5-2 of the city charter, replied in writing to the resolution. He denied the truth of each and every one of the reasons given for his removal and requested an opportunity to be heard at a meeting of the council. He further stated in his reply that at the requested hearing he expected the council to prove the truth of the reasons for removal "by the presentation of evidence in support thereof, through witnesses duly sworn and subject to cross-examination."

Two days later relator filed with the city clerk a motion for a bill of particulars addressed to the reasons stated in the preliminary resolution of removal. On the same day respondents, acting as the council, voted to give relator an opportunity to be heard at a meeting of the council to be held November 28, 1958. On November 12 respondents referred relator's motion for a bill of particulars to the meeting of November 28, 1958.

At that meeting respondents denied relator's request for a bill of particulars. No evidence was presented by anyone to support the reasons stated in the preliminary resolution of removal. At the relator's request, one of the respondents moved that all the reasons for removal be dismissed for lack of evidence; and because the reasons for removal were not supported by any legally competent evidence, that respondents not adopt a final resolution of removal and that they rescind the preliminary resolution of removal and reinstate relator to his position as city manager. After the requested motions were rejected by respondents, relator stated that he would present no evidence or testimony in his own behalf and the meeting then adjourned.

The relator was subsequently notified by mail that there would be a special meeting of the city council on December 5, 1958 to consider and act upon a final resolution of his removal as city manager and other matters incidental thereto. On that date the instant petition for a writ of

mandamus was filed. The special meeting of the city council called for December 5, 1958 was not held because the alternative writ of mandamus issued by this court on said date restrained any further action by respondents in their capacity as councilmen.

The petitioner and relator have agreed that the basic question is whether "under the Charter of the City of Newport and the law of the State of Rhode Island, the proceedings by which the Respondents seek to remove the Relator from his office of City Manager for the City of Newport are quasi-judicial in nature."

It is clear from the terms of the contract between relator and respondents that the former accepted his engagement subject to dismissal at the will of respondents, in the manner adopted by them, and cannot now complain unless, as relator contends, respondents are without jurisdiction to deprive him of a hearing, quasi-judicial in nature.

The city charter was adopted pursuant to the provisions of article XXVIII of amendments to the constitution of this state and the provisions of the charter are controlling unless they do not conform to the constitutional restrictions imposed by that article. No such inconsistency is claimed by relator.

Chapter I, sec. 1-1, of the city charter declares that the municipal government of Newport shall be a "council-manager government" with all powers of the city to be vested in an elective council which shall *"appoint* the city manager, who shall execute the laws and administer the government of the city." (italics ours)

Chapter IV of the charter creates certain offices the incumbents of which are elected by the council, in some instances for a term commensurate with their own and in other instances for definite terms. Among the former are a city solicitor and a judge of probate while the members of the board of tax appeals and the canvassing authority are elected for staggered six-year terms.

Chapter VI, sec. 6-7, of the charter provides: "The council may *for cause* suspend or remove from office any officer of the city elected by it." (italics ours) Nowhere in the charter is there a reference to removal for cause with respect to the city manager.

Chapter V, sec. 5-2, sets out the manner of his removal, and although this section provides that the council shall state its reasons for his removal in the preliminary resolution, and further provides that the city manager may in writing request an opportunity to be heard, there is no express mandate from the people that such opportunity to be heard shall be in the nature of a quasi-judicial hearing.

Counsel for relator contends, however, that the words "an opportunity to be heard" are synonymous with "hearing," that "reasons" is interchangeable with "causes" or "charges," and that the words "full consideration" as they appear in the charter are to be construed as meaning a determination by the council on the sufficiency of the evidence adduced. We do not agree with these interpretations. The language is clear and unambiguous and read in its entirety is open only to literal interpretation.

As authority for his contention, relator quotes from 4 McQuillin, Municipal Corporations (3d ed.), §12.256, p. 335, wherein it is stated: "But if the suspension or removal is for cause or is exercised after a hearing, the proceedings are generally regarded as judicial or quasi-judicial in character. They are considered judicial when they embrace (1) specific written charges, (2) a hearing, (3) sworn testimony usually reduced to writing, and (4) a determination or judgment as to the sufficiency of the evidence to warrant removal." He argues that by construing the pertinent language of sec. 5-2 of the charter as urged by him, three of the four characteristics of a judicial proceeding are to be found in the city charter. It is to be observed that relator finds it necessary to depart from or change the literal mean-

ing of sec. 5-2 to claim all three characteristics of a judicial proceeding as laid down in McQuillin.

In support of his contention relator also calls to our attention the decisions in several other jurisdictions. We have examined these and other decisions and find that they are not helpful in the instant case. All of them are based on statutes which either expressly provide or have been construed to require that just cause for removal must be shown. The Newport city charter clearly does not expressly require that the city manager may be removed only for cause shown nor, in our opinion, can it be so construed in the light of sec. 6-7 wherein the council may suspend or remove only for cause shown any officer of the city elected by it. If the people of Newport had intended to afford the same protection to the city manager as is afforded to officers elected by the council they would have so provided.

The relator argues that the cases of *Hanna* v. *Board of Aldermen,* 54 R. I. 392, *McCarthy* v. *Board of Aldermen,* 38 R. I. 385, and *Garvin* v. *McCarthy,* 39 R. I. 365, are authority for his contention that the provisions of sec. 5-2 of the charter require a hearing judicial in nature. These cases and others cited therein rest on the proposition that the city charters or statutes, on which the petitioners in those cases relied, expressly required written charges alleging misconduct or incapacity of such character as the removing authority may deem a disqualification for office. Those cases are not in point. It is elementary that charges must be supported by legal evidence, but it is not necessary to prefer charges against the city manager to effect his removal.

We are of the opinion that the provisions of "Sec. 5-2—Removal" must be read together with the provisions of "Sec. 5-1—Engagement." It is clear from the latter that in adopting their charter the people of Newport intended that the city manager should be an employee as distinguished from a civil officer and could be removed at the

pleasure of the council. He may be engaged "for such term as the council may specify," which could be for a stated or unspecified period. In neither case would the city manager have tenure.

We are unable to avoid the clear intendment of the provision: "The relationship between the city and the city manager shall be contractual and not that between a municipality and a civil officer." Nowhere in the charter is there any language which persuades us that the status of the relator is anything but that of a mere employee subject to engagement and removal by the council in accordance with the procedure set forth in secs. 5-1 and 2.

It is clear from the allegations in the petition that respondents in their capacity as councilmen have complied with the procedure set forth in secs. 5-1 and 2. The opportunity requested by relator to be heard at the council meeting called for December 5, 1958 would have entitled him to a hearing which is legislative and not judicial in nature.

In their brief and oral argument counsel for the respondents contend that the petition should not be entertained on the grounds that mandamus is not the proper remedy. In view of the conclusions reached on the basis of the allegations made and sworn to by the petitioner and the relator, we deem it unnecessary to consider this contention.

The petition is denied and dismissed, the writ heretofore issued is quashed, and the order enjoining and restraining the respondents from proceeding to consider and adopt a final resolution of removal is dissolved.

*Hogan & Hogan, Edward T. Hogan, Thomas S. Hogan,* for petitioner.

*John F. Phelan, City Solicitor,* for respondents.