79 N.J. Super. 177 (1963)
191 A.2d 79
RICHARD J. BOWEN, PLAINTIFF,
v.
MAYOR AND COUNCIL OF THE CITY OF LONG BRANCH, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided May 10, 1963.
*180 Mr. Norman H. Mesnikoff argued the matter for plaintiff (Mr. Charles Frankel, attorney).
Mr. Louis R. Aikins argued the matter for defendants.
MARIANO, J.S.C.
This is an action in lieu of prerogative writs to review the validity of the proceedings taken by the City Council of the City of Long Branch in removing the *181 plaintiff as city manager pursuant to the provisions of N.J.S.A. 40:69A-93.
On the following agreed facts the parties cross-motioned for summary judgment:
During the times hereinafter mentioned the City of Long Branch was and is governed by Council-Manager Plan D of the Optional Municipal Charter Law known as the Faulkner Act. N.J.S.A. 40:69A-1 et seq. Pursuant to the said form of government the city did, on October 23, 1961, adopt an ordinance known as "Administrative Code."
On July 1, 1961 Councilman Thomas L. McClintock was unanimously elected mayor, and Councilman Samuel A. Marks was designated as deputy mayor.
On February 7, 1963 Deputy Mayor Marks, in the absence of Mayor McClintock, called a special meeting of the city council to be held on Saturday, February 9, 1963, at noon, "for the purpose of introducing two resolutions  one calling for a vote of confidence for the City Manager by the Council; or if in the event he does not receive this vote of confidence, a second resolution relieving Mr. Bowen of his duties as City Manager." Copies of the said notice were distributed to all members of the city council, and notice of such special meeting was publicized in the Long Branch Daily Record at least 24 hours in advance of the date fixed for the special meeting.
At the said special meeting on February 9, 1963, Mayor McClintock and the other eight members of city council were in attendance. The meeting commenced at 12:05 P.M. with the mayor presiding, and no one objected, either orally or in writing, concerning the notice of the calling of the special meeting by the deputy mayor. The resolution calling for a vote of confidence in the manner in which plaintiff was performing his duties as city manager failed to pass. Immediately thereafter a preliminary resolution of removal was offered for adoption and seconded, and after discussion of the merits by various members of the city council and the plaintiff himself, the following resolution was adopted by a vote of 6 to 3:
*182 "By Councilman George:
WHEREAS, Richard J. Bowen, City Manager of the City of Long Branch, has failed to receive a vote of confidence from the City Council in the manner in which he is performing the duties of his office and in his administration of City affairs; and
WHEREAS, the majority of said City Council feels that the general interest and welfare of the City would be best served by relieving Richard J. Bowen of his duties as City Manager; and
WHEREAS, N.J.S.A. 40:69A-93 (Section 9-13 of the Faulkner Act) provides that the municipal manager shall hold office for an indefinite term and may be removed by a majority vote of the Council;
NOW, THEREFORE, BE IT RESOLVED by the City Council of the City of Long Branch that Richard J. Bowen be, and he hereby is, removed from the office of City Manager of the City of Long Branch, effective thirty (30) days after the date of adoption of this resolution, for the following reasons:
1. His involvement in controversies which have caused adverse publicity to the City of Long Branch, thereby causing embarrassment to the City Council and to the entire City.
2. His failure to work harmoniously with the City Council as a whole in the carrying out of the legislative and executive programs of the City, thereby preventing the city government from functioning in an orderly and efficient manner; and
BE IT FURTHER RESOLVED that the said Richard J. Bowen be, and he hereby is, immediately suspended from the performance of any further duties as City Manager of the City of Long Branch; and
BE IT FURTHER RESOLVED that the Acting City Treasurer be, and she hereby is, authorized and directed to pay to the said Richard J. Bowen forthwith any unpaid balance of his salary together with his salary for the next three calendar months following the date of adoption of this resolution as provided by N.J.S.A. 40:69A-93."
At no time, commencing with the introduction of the preliminary resolution of removal to the time of its final passage, was any objection or protest, written or oral, lodged by anyone in attendance at the said meeting that the subject matter of the said resolution was not denominated in the notice of the call for the meeting.
Subsequently plaintiff, pursuant to N.J.S.A. 40:69A-3, made a timely written request for a public hearing, which was duly fixed by city council for March 9, 1963, at the Long Branch Junior High School. Prior to the commencement of *183 the hearing city council adopted a resolution establishing certain "Rules of Procedure" for the conduct of the hearing. Immediately thereafter the hearing was turned over to plaintiff and his attorney to afford them an opportunity to present any matter desired by them on plaintiff's behalf.
In accordance with rule 2 of the rules of procedure the city council did not cause any evidence to be presented by anyone to support the reasons stated in the preliminary resolution of removal. On the other hand, in accordance with rule 3 plaintiff and his attorney were given a full and unlimited opportunity to present any matters they wished before city council. Plaintiff availed himself of this opportunity at various sessions of the hearing held on March 9, 15, 16 and 19, after which summation thereof was made by his counsel. Thereafter, city council deferred final vote on plaintiff's removal as city manager until March 26, 1963, at 7:30 P.M. in order that it might have ample time to give consideration to all matters presented by the plaintiff.
On March 26, 1963, the following resolution of removal was adopted by a vote of 6 to 3:
"By Councilman George:
WHEREAS, the City Council of the City of Long Branch, at a special meeting thereof held on the 9th day of February, 1963, duly adopted a Preliminary Resolution of Removal of Richard J. Bowen as City Manager of the City of Long Branch; and
WHEREAS, pursuant to the provisions of N.J.S.A. 40:69A-93, the said Richard J. Bowen requested a public hearing on his removal as City Manager; and
WHEREAS, such public hearing has been duly held and the City Council has fully considered the matters brought before it; and
WHEREAS, the majority of the City Council is of the opinion that the preliminary removal of said Richard J. Bowen as City Manager should be confirmed;
NOW, THEREFORE, BE IT RESOLVED by the City Council of the City of Long Branch, that Richard J. Bowen be, and he hereby is, removed from the office of City Manager of the City of Long Branch, effective immediately."
The attack made upon the legality of the special meeting of February 9, 1963, at which the preliminary resolution of *184 removal was adopted, is predicated upon the following grounds:
1. Neither N.J.S.A. 40:69A-1 et seq. nor the ordinance known as the Administrative Code provides for the appointment or selection of a deputy mayor, hence the deputy mayor was without authority to call same.
2. The resolution of February 9, 1963 refers to "relieving" Mr. Bowen of his duties as city manager and not his "removal."
3. Failure to publish notice of such special meeting at least 24 hours in advance thereof in a newspaper of general circulation within the city, in accordance with the provisions of the statute and the Administrative Code. This point has been abandoned.
N.J.S.A. 40:69A-87 provides:
"The mayor shall preside at all meetings of the municipal council and shall have a voice and vote in its proceedings. He shall fill vacancies occurring in the trustees of the public library and in the board of education where the municipality is operating under chapter 6 of Title 18 of the Revised Statutes for such terms of office as are provided by law. All bonds, notes, contracts and written obligations of the municipality shall be executed on its behalf by the mayor or, in the event of his inability to act, by such councilman as the municipal council shall designate to act as mayor during his absence or disability. The powers and duties of the mayor shall be only such as are expressly conferred upon him by this article." (Emphasis supplied)
The words above italicized assume occasions during which the duly elected mayor may be unable to act in his capacity as such by reason of absence or disability, and while they specifically provide for such formal acts as the signing of bonds, notes, contracts and written obligations, it flies in the face of all reason to contend that any councilman designated to act as mayor should not also be able to assume the other functions of the mayor, such as presiding at meetings of the municipal council and calling special meetings thereof.
The word "deputy" means "a person appointed to act for, or in the place of, another or others." Webster's New World Dictionary of the American Language (College ed. 1960).
*185 Pursuant to the notice of call of the special meeting by Deputy Mayor Marks, all members of city council, including the mayor, and the plaintiff attended without objection to the manner in which it was called. The plaintiff fully participated in the proceedings which culminated in the adoption of the preliminary resolution. To differentiate between the words "relieving" and "removing" under the circumstances strains reason and carries the study of semantics to a dryly illogical extreme. Surely plaintiff was apprised of the fact that what was sought was his removal.
In any event, I conclude that the plaintiff, by his voluntary appearance and participation in the business of the special meeting of February 9, 1963, waived any alleged procedural defect in the calling of the same. On the basis of the foregoing, I find that the special meeting held on February 9, 1963, at which the preliminary resolution of removal was adopted, was in all procedural respects proper.
N.J.S.A. 40:69A-93, which reads as set forth below, provides the mode for the removal of a city manager:
"The municipal manager shall hold office for an indefinite term and may be removed by a majority vote of the council. At least thirty days before such removal shall become effective, the council shall by a majority vote of its members adopt a preliminary resolution stating the reasons for his removal. The manager may reply in writing and may request a public hearing, which shall be held not earlier than twenty days nor later than thirty days after the filing of such request. After such public hearing, if one be requested, and after full consideration, the council by majority vote of its members may adopt a final resolution of removal. By the preliminary resolution the council may suspend the manager from duty, but shall in any case cause to be paid him forthwith any unpaid balance of his salary and his salary for the next three calendar months following adoption of the preliminary resolution."
Plaintiff contends that the hearing accorded him was not within the intendment of the language of the above statute.
At the very outset, it clearly appears that the statute does not require that the city manager may be removed only for cause. Had the Legislature intended to afford the same *186 protection to the city manager as is afforded others who can only be removed for cause, it would have so provided.
The history concerning the adoption of the Faulkner Act is resorted to in order to determine the type of hearing which plaintiff is entitled to after his request for the same.
In 1948 the Governor, Senate and General Assembly of the State of New Jersey caused to be created a "Commission on Municipal Government" to provide for an orderly and systematic consideration of the local charter needs of municipalities within the State, and in particular to provide for the study of existing and available forms of government, for the purpose of enactment of suitable legislation. The commission thereupon commenced its study and on February 14, 1949 filed a report of its findings which included proposed optional charter plans.
One of these plans was denominated "Council-Manager Plan," and chapter 5 of the report is devoted to this form of Government. The summary of this plan on page 66 of said report contains the following language:
"This chapter provides for the third optional form  a revised version of the council-manager form currently available to New Jersey municipalities. The new plan alters the composition of the council, prevents improper council influence in administration, and modifies the tenure provision for the manager in accordance with the Model City Charter of the National Municipal League. Throughout, the plan adheres to the basic theory of the manager form  that there should be a distinct separation of policy determination and administration."
The Model City Charter referred to is the 1941 revision, thereof which serves as the basis for many council-manager plans in municipalities throughout the United States.
In summarizing the provisions for the municipal manager in its 1949 report, the Commission on Municipal Government stated (p. 66):
"Provision is made for the appointment of a fully qualified manager and the fixing of his salary by the council. The manager shall serve at the pleasure of the council. The duties of the manager shall include *187 acting as chief executive official, preparation of the annual budget, appointing all department heads, negotiating contracts, making recommendations to the council, and investigating the affairs of any officer or department." (Emphasis supplied)
The particular provision of the report relating to the tenure and removal of the municipal manager is contained in section 5-15 of article 3 of the council-manager plan, which section is verbatim with section 10, article II of the Model City Charter (1941 revision) of the National Municipal League. Commenting upon section 5-15 of the proposed plan, the commission further stated at page 71:
"Authorities have long been opposed to any special tenure provisions for managers on the grounds that a good manager does not need the protection of tenure and that any manager who has lost the support and confidence of the elected representatives of the people cannot be effective. The present tenure provision in the New Jersey manager law permits summary removal of municipal managers during the first three calendar years of his employment and removal thereafter only for cause."
It is thus obvious from the above quotations that the intent was that the municipal manager of any municipality under the proposed council-manager plan should function only so long as he has the support and confidence of the elected representatives, and that any provision for tenure was specifically and intentionally excluded  bearing in mind the tenure provisions contained in the 1923 Municipal Manager Act under which the City of Asbury Park and the Borough of Keansburg now function.
Legislation implementing the various plans set forth in the 1949 report of the Commission of Municipal Government was not enacted and the Commission was requested to continue its deliberations and revise the optional charters to be made available. This was done in a report of the commission dated February 20, 1950, which reported out substantially all of the provisions of the Faulkner Act (N.J.S.A. 40:69A-1 through 210) enacted in 1950. Again the commission made comments on the various provisions contained in the optional *188 plans, and in commenting upon the council-manager plan made the same comments as contained on page 66 of the 1949 report. Second Report of the Commission on Municipal Government, at page 8.
The most significant portion of the comments in both reports is that "the manager shall serve at the pleasure of the council." Against this comment must be weighed the words "public hearing" in N.J.S.A. 40:69A-93, in judging whether plaintiff received the type of hearing to which he was entitled pursuant to that section.
A rather exhaustive analysis of the word "hearing" as used in various judicial, quasi-judicial, legislative and administrative proceedings is contained in Handlon v. Town of Belleville, 4 N.J. 99 (1950), which held that proceedings of the Civil Service Commission of New Jersey on a review of disciplinary action by a municipality were quasi-judicial in nature. In discussing whether a particular proceeding is legislative, judicial or quasi-judicial in nature, the court stated:
"Whether the proceeding in essence is legislative or judicial is determined by the nature of the final act and the character of the process and operation rather than by the general character of the authority itself. * * *
The power to hear and determine is not peculiar to the judicial function. The mere exercise of judgment and discretion in the performance of an official act is not necessarily the exertion of what is denominated judicial power. * * *
A discretion may be judicial on the one hand, or nonjudicial or legislative or executive on the other." (at pp. 104-105)
The federal district court in Coleman v. Brucker, 156 F. Supp. 126 (D.C.D.C. 1957), characterized the word "hearing," as granted to federal employees by federal statutes in security risk cases, as follows:
"* * * a hearing provided by statute does not necessarily mean a full hearing of the type accorded by a court of law. It does not mean a trial. It may be a summary hearing. It merely means an opportunity to the plaintiff to answer charges and to give an explanation and to introduce evidence." (at p. 128)
*189 When a municipal employee serves at the pleasure of the municipal governing body, his removal or suspension is exercised summarily and may be considered the exercise of an administrative power. 4 McQuillan, Municipal Corporations (3d ed.), section 12.256, page 335. This same section further provides that if the suspension or removal is for cause or is exercised after a hearing, the proceedings are generally regarded as judicial or quasi-judicial in character. There is no doubt that if the hearing is judicial or quasi-judicial in nature, a person charged would be entitled to constitutional safeguards, but in the instant case plaintiff, in accordance with the provisions of the statute, may be removed without any cause or causes being assigned.
However, in examining the provisions of N.J.S.A. 40:69A-93 concerning "public hearing," and the comment of the New Jersey Commission on Municipal Government that the municipal manager under the Faulkner Act "shall serve at the pleasure of the council," it would appear that the type of hearing provided for is of the nature described in the Coleman case. So held the Supreme Court of Rhode Island in Nugent ex rel. Beck v. Leys, 88 R.I. 446, 149 A.2d 716 (1959), a case involving the removal of the city manager of the City of Newport under a removal provision likewise adapted from the Model City Charter (1941 revision), and practically identical with that contained in N.J.S.A. 40:69A-93.
In the Nugent case, supra, the city council of Newport adopted a preliminary resolution of removal, and the city manager thereafter replied in writing and requested "an opportunity to be heard at a meeting of the council" under a provision of the city charter which read as follows:
"Removal. The manager may be removed by a majority vote of all the members of the council. At least thirty (30) days before such removal shall become effective, the council shall adopt a preliminary resolution stating the reasons for his removal. The manager may reply in writing and may request an opportunity to be heard at a meeting of the council which shall be held not earlier than twenty *190 (20) days nor later than thirty (30) days after the filing of such request.
After such hearing of the council, if one be requested, and after full consideration, the council may adopt a final resolution of removal. By the preliminary resolution the council may suspend the manager from duty but shall cause to be paid to him forthwith any unpaid balance of his salary and his salary for the next three calendar months following adoption of the preliminary resolution, but no such payment shall be made if his removal is for any reason involving his integrity or moral turpitude."
On the date fixed for the hearing, the city council denied the manager's request for a bill of particulars, and no evidence was presented by anyone to support the reasons stated in the preliminary resolution of removal. A motion for dismissal of the reasons for removal was made because of the lack of supporting evidence, and a further motion was made that the preliminary resolution of removal be rescinded and that the manager be reinstated to his position, which motions were rejected. The manager stated that he would present no evidence or testimony in his own behalf, and the meeting was adjourned. A temporary restraint was then obtained against final removal proceedings.
As against the contention that the manager was entitled to have the truth of the reasons for removal proved by presentation of evidence in support thereof, through witnesses duly sworn and subject to cross-examination, the court determined:
"The opportunity requested by relator to be heard at the council meeting called for December 5, 1958, would have entitled him to a hearing which is legislative and not judicial in nature." (149 A.2d, at p. 721)
The reasoning of the court in arriving at its conclusion is most significant since it involves construction of some of the very words used in N.J.S.A. 40:69A-93. In asserting that the hearing was judicial in nature, the manager contended that "reasons" was interchangeable with "causes" or "charges," and that the words "full consideration" meant a determination by the city council on the sufficiency of the evidence adduced. The court struck down these contentions and *191 held that the characteristics of a judicial hearing, as laid down in 4 McQuillan, Municipal Corporations (3d ed.), section 12.256, page 335, were absent, i.e., specific written charges, a hearing, sworn testimony usually reduced to writing, and a determination or judgment as to the sufficiency of the evidence to warrant removal.
The court's reasoning in the Nugent case is most apposite and dictates a like determination in the matter at hand, especially in the light of the avowed legislative intent that the municipal manager "shall serve at the pleasure of the council."
The further contention in plaintiff's brief that the "reasons" set forth in the preliminary resolution of removal failed sufficiently to apprise him of the particulars so that he could "prepare his explanations in defense," is predicated upon the proposition that "reasons" is synonymous with "charges." The Nugent case, supra, held that they were not. The word "reason" should be given its plain and ordinary meaning of "an expression or statement offered as an explanation of a belief or assertion or as a justification of an act or procedure." Webster's Third New International Dictionary (1961 ed.).
The final compelling reason for the conclusion that plaintiff was entitled to a hearing legislative and not judicial in nature is that the removal of a municipal manager under N.J.S.A. 40:69A:93 is not made dependent upon the holding of a "public hearing," but on the contrary, the statute places the burden on the municipal manager to make a formal written request therefor. Should the manager not request a hearing, then it would unquestionably appear that the prescribed preliminary resolution of removal effects a permanent removal.
It appears to be contended by the manager that the term "public hearing" implies the type of a hearing which is surrounded by the requirements of procedural due process and other constitutional privileges, namely, confrontation of witnesses against him and the opportunity to cross-examine, etc. *192 It must be borne in mind that these provisions apply only in trials of criminal cases. It has no application in proceedings of other types. The hearing provided for by the statute in question does not necessarily mean a full hearing of the type accorded by a court of law. It does not mean a trial. It may be a summary hearing. It merely affords the plaintiff an opportunity to refute the reasons assigned and to give him an opportunity to explain and to introduce evidence. It certainly does not mean a trial in any strict formal sense. It merely means an inquiry fitted in its range to the needs of the occasion.
It is the opinion of this court that the plaintiff's right to a hearing upon request serves two useful purposes: (1) in seeking employment as a municipal manager in another municipality he can present to his prospective employer his side of the story; and (2) the municipal electorate is given an opportunity to know why its governing officials took the action they did, and later to form a judgment whether they acted wisely. This is in keeping with the concept of the legislative type of hearing.
City council fulfilled its statutory obligation of stating the "reasons" for plaintiff's removal. Beyond this it had no further obligation but to give the plaintiff an opportunity to be heard, with a view that the matters he presented by plaintiff might conceivably change the minds of a majority of the council. City council, in acting as a legislative hearing body, was merely bound to give full consideration to the matters presented to it. A legislative body is not obliged to submit any of its members or consultants to examination. Wilson v. City of Long Branch, 27 N.J. 360, 383, 390 (1958); cert. denied 358 U.S. 873, 79 S.Ct. 113, 3 L.Ed.2d 104.
The city council, possessing the power to determine its own rules of procedure not inconsistent with the statute or ordinance, N.J.S.A. 40:69A-180, acted in accordance with those rules.
The manifest purpose of the provision that the preliminary resolution state the reasons for the removal of the *193 plaintiff is to impose restraint upon unwarranted, prejudiced or wrongful removals, and also to enable the removed officer to know why he has been deemed unworthy to continue in the public service. True it is that the requirement for the statement of the reasons is by no means a vain form.
Another purpose for the requirement of the statement of reasons is to afford some sense of security to faithful, efficient and honest employees, and at the same time to confer upon proper authorities the power to remove the incompetent, the inefficient and the unworthy.
The reasons set forth in the resolution of February 9, 1963, supra, although minimal in nature, sufficiently state the circumstances which generated the removal. It cannot be denied that the stated reasons set forth why plaintiff was removed.
In summary, it is the opinion of this court that the plaintiff was given the type of hearing to which he was entitled under the provisions of N.J.S.A. 40:69A-93.
Plaintiff's motion for summary judgment is denied; defendant's motion for summary judgment is granted. Counsel may submit appropriate order.