217 N.J. Super. 31 (1987)
524 A.2d 1270
LOUIS J. COLETTI, PLAINTIFF-APPELLANT,
v.
UNION COUNTY BOARD OF CHOSEN FREEHOLDERS, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted December 9, 1986.
Decided April 20, 1987.
*32 Before Judges ANTELL, BRODY and D'ANNUNZIO
McCarter and English, attorneys for appellant (Joseph E. Irenas, of counsel; Frank E. Ferruggia, on the brief).
Sills, Beck, Cummis, Zuckerman, Radin, Tischman & Epstein, attorneys for respondent (Stephen J. Moses, of counsel; Jerald D. Baranoff, on the brief).
The opinion of the court was delivered by D'ANNUNZIO, J.S.C. (temporarily assigned).
The issue is whether a Board of Chosen Freeholders (Board) may remove a county manager without an adjudicatory hearing at which the Board would have the burden of establishing good cause for removal.
Plaintiff was appointed Union County Manager by the Board in June, 1984. His relationship with the Board was stormy and *33 marked by conflict. For example, in January, 1985 plaintiff requested an investigation by the county prosecutor of plaintiff's allegations that the Board violated the local budget law by authorizing the expenditure of funds without written certifications that those funds were available. In February, 1985 plaintiff commenced an action against the Board in the Superior Court for a declaration that he, and not the Board, had the power to appoint special labor negotiators for the county.
Because of these conflicts and other disputes, the Board retained the services of a law firm in August, 1985 to assist it in dealing with plaintiff. On September 5, 1985, after the Board received its attorneys' report, the Board adopted resolution 495-8. The resolution suspended Coletti, with pay, from his position as county manager pending a public hearing to be held on September 25, 1985. The resolution generally charged that Coletti had acted irresponsibly and unprofessionally, that he had refused to comply with Board policies and legislation, that he had failed to properly communicate and cooperate with the Board and that he sought to usurp the Board's powers and responsibilities. This recitation of general complaints was followed by 19 paragraphs of more specific allegations.
In response to resolution 495-8, plaintiff commenced this action alleging that the Board had no authority to temporarily suspend him. Plaintiff sought an injunction prohibiting the Board from interfering with the performance of his duties and a declaration that he was entitled to an adjudicatory hearing before he could be suspended. Plaintiff further alleged that resolution 495-8 was adopted in violation of the Open Public Meetings Act. N.J.S.A. 10:4-6 et seq.
Judge Beglin issued an order to show cause but denied plaintiff temporary injunctive relief.[1]
*34 On October 1, 1985 the Board held a public hearing to consider Coletti's removal. The Board submitted no evidence or testimony to support its charges, but it listened to a presentation by plaintiff and his counsel in rebuttal of the Board's charges. The Board also heard from several members of the public. At the conclusion of the hearing, the Board adopted resolution 686-5 which removed Coletti as county manager effective immediately.
Thereafter, plaintiff amended his complaint by consent and sought a judgment invalidating resolution 686-5 and restoring him to his position as county manager.
On October 22, 1985, the adjourned return date of the order to show cause, Judge Beglin, in a comprehensive oral opinion, denied plaintiff relief and entered judgment in favor of the Board. Plaintiff appeals and we affirm.
Traditionally, counties have been governed by Boards of Chosen Freeholders. N.J.S.A. 40:20-1. The Optional County Charter Law (Charter Law), N.J.S.A. 40:41A-1 et seq., grants the citizens of each county the right to adopt alternatives to traditional county government. Among the alternatives are the County Executive Plan (N.J.S.A. 40:41A-31), the County Manager Plan (N.J.S.A. 40:41A-45), the County Supervisor Plan (N.J.S.A. 40:41A-59) and the Board President Plan (N.J.S.A. 40:41A-72). Union County adopted the County Manager Plan. N.J.S.A. 40:41A-47 (hereafter, § 47) establishes the qualifications of the county manager and provides for the county manager's appointment and removal. It reads:
The county manager shall be qualified by administrative and executive experience and ability to serve as the chief executive of the county. He shall be appointed by a majority vote of the whole number of the board of freeholders and shall serve for an indefinite term. He may be removed by a majority vote of the board subject to due notice and a public hearing. Such notice shall be in writing and shall be accompanied by a written bill of particular charges and complaints and public hearing on these charges shall be no less than 15 or more than 30 days after personal service of notice and charges.
At the time of his appointment the manager need not be a resident of the county but after his appointment he may reside outside the county only with permission of the board.
*35 Plaintiff contends that the statutory requirements of due notice, a written bill of particular charges and complaints and a public hearing imply a requirement that the removal be for good cause with the burden of proof on the Board.
In construing a statute we must give effect to the legislature's intent. Monmouth County v. Wissell, 68 N.J. 35 (1975). Sources of legislative intent are the language of a statute, the policy behind a statute, concepts of reasonableness and legislative history. Shapiro v. Essex County Freeholder Board, 177 N.J. Super. 87 (Law Div. 1980), aff'd. 183 N.J. Super. 24 (App.Div. 1982), aff'd 91 N.J. 430 (1982).
By its terms, the statute does not require a showing of good cause. In other contexts, when the legislature has required a showing of good cause to terminate employment or to remove someone from office it has expressed that requirement in the applicable statute. N.J.S.A. 18A:28-5 (teachers); N.J.S.A. 18A:17-1 (secretaries and other administrative employees of boards of education); N.J.S.A. 40A:14-17 (fire personnel employed "during good behavior and efficiency"); N.J.S.A. 40A:14-128 (police personnel employed "during good behavior and efficiency"). Municipal managers appointed before January 9, 1982 were subject to removal without cause during the first three years of their employment but thereafter could "be removed only for cause ..." N.J.S.A. 40:82-3.[2] See Golaine v. Cardinale, 142 N.J. Super. 385, 394 (Law Div. 1976), aff'd. o.b. 163 N.J. Super. 453 (App.Div. 1978) for a more comprehensive list of removal statutes requiring cause. The absence of a specific good cause requirement in the Charter Law is a strong indicia of the legislature's intent that good cause need not be established as a prerequisite of removal of a county manager.
A comparison of the executives created by each of the four optional plans, their powers and the method by which they *36 obtain office is also helpful in construing § 47. The county executive is elected by the voters to a four year term. N.J.S.A. 40:41A-33. The county supervisor is elected by the voters to a three year term. N.J.S.A. 40:41A-61. The executive and the supervisor each have the power to approve or veto ordinances adopted by the board. N.J.S.A. 40:41A-37g and 65f. In addition, the executive has the power to appoint the county counsel. N.J.S.A. 40:41A-37b. The county manager and the board president do not have the power to approve or veto ordinances. The board president must be a freeholder duly elected by the voters and he must be elected board president for a one year term by the majority vote of his fellow freeholders.
Plaintiff's contention that he can be removed only for good cause after an adjudicatory hearing strikes a discordant note when that contention is measured against the powers and tenure of the other executives. If plaintiff's position is accepted, then the county manager, in effect, is appointed to a lifetime position unless he engages in egregious conduct. Unlike the county executive, the county supervisor and the board president, the county manager would not be accountable to the electorate. Under the construction urged by plaintiff, the county manager would be accountable to no one except within a narrow range of conduct sufficient to constitute good cause for removal. See generally Berardi v. Rutter, 42 N.J. Super. 39 (App.Div. 1956), aff'd sub. nom. In Re Berardi, 23 N.J. 485 (1957) (revocation of private investigator's license for cause); In re Tenure Hearing of Grossman, 127 N.J. Super. 13 (App. Div. 1974), certif. den. 65 N.J. 292 (1974) (dismissal of tenured teacher).
Enactment of the Charter Law was preceded by the creation of the County and Municipal Government Study Commission (Commission), L. 1966, c. 28, and the Commission's filing of the reports required by that statute. L. 1966, c. 28 § 4. The Charter Law has been described as a response to the Commission's reports. Union Cty. Park Comm. v. Cty. of Union, 154 N.J. Super. 213, 224 (Law Div. 1976), aff'd o.b. 154 N.J. Super. *37 125 (App.Div. 1977), certif. den. 75 N.J. 531 (1977). Reports of commissioners specifically appointed to suggest legislation are valuable aides in determining legislative intent. Shapiro v. Essex Cty. Freeholders Bd., supra. In this case, the Commission's report,[3] popularly known as the Musto Report, is very helpful.
In its outline of the "Strong Manager Plan" the report highlights the fact that the manager "[m]ay be removed by a majority vote of the Board, subject to adequate notice and hearing." Id. at 114. In discussing the manager's powers and duties, particularly the manager's executive function, the report states:

Comment: The manager can appoint, employ and fire unconditionally. The Board can fire only the manager. This provides for independence in administrative matters, while making the chief professional accountable to elected legislators. [Id. at 115]
The report also states that one of the advantages of the manager plan is that "it continues to vest overall political responsibility in the county legislative body, rather than dividing it between an elected Board and a separately elected chief executive." Id. at 116. The report also lists as an advantage the fact that "the manager is politically responsible to elected officials; he can be ousted quickly if things go wrong." Id. at 117. These statements by the Commission are consistent with a recurrent theme of its report: the need for accountability to the voters or to the officials elected by the voters. The Commission did not recommend the creation of an office whose holder would be untouchable except in the context of an adjudication of good cause to be determined in a trial.
In Bowen v. Mayor and Council of Long Branch, 79 N.J. Super. 177, 185 (Law Div. 1963), the court in construing N.J.S.A. 40:69A-93, a section of the Faulkner Act which is similar to *38 section 47 of the Charter Law, ruled that the statute did not require cause for the removal of a city manager.
In 1979, the County and Municipal Government Study Commission characterized tenure for the city manager as a weakness of the non-Faulkner Act Municipal Manager form of local government. N.J.S.A. 40:82-1 et seq. "This feature of the Municipal Manager Form has frequently been given as one reason for the limited use of this form of local government. Tenure for an appointed officer with substantial executive powers may well be inappropriate. It is recommended that the Municipal Manager Form of government law be amended to provide that, any manager appointed in the future shall serve at the pleasure of the council, subject to removal at any time by a majority voter [sic]." State of New Jersey County & Municipal Government Study Commission, Forms of Municipal Government In New Jersey, Seventeenth Report, January 1979, p. 135. As previously noted in this opinion, the legislative response was to prospectively abolish tenure for newly appointed municipal managers. N.J.S.A. 40:82-3b. Thus, the Commission continued its institutional theme of accountability which plaintiff seeks to avoid.
Plaintiff points to several appointive positions under the Charter Law, the holders of which serve "at the pleasure" of the board, N.J.S.A. 40:41A-68 (Chief Administrator under County Supervisor Plan), N.J.S.A. 40:41A-82 (Chief Administrator under Board President Plan), or at the pleasure of the County Manager, N.J.S.A. 40:41A-56 (Deputy Manager). Plaintiff contends that the absence of the "at the pleasure" language in § 47 implies a requirement of good cause for his removal. We disagree. The statutes alluded to authorize the officials' superiors to terminate their employment without pre-termination exposure of their reasons to the public.
Section 47, on the other hand, requires public exposure of the board's reasons for removal as part of the legislative-political process which § 47 creates. This process provides a public *39 forum to the county manager to rebut the Board's charges. The forum gives the county manager an opportunity to defend his reputation and to influence public opinion and the views of individual freeholders. Ultimately the voters are given the opportunity to express themselves on the issue at the next election. Although the statute requires public exposure of the board's action and reasons, it does not require an adjudicatory hearing or good cause.
Plaintiff's contention that the public notice of the September 5, 1985 meeting was inadequate and, therefore, violated the Open Public Meetings Act, N.J.S.A. 10:4-6 et seq. is clearly without merit. R. 2:11-3(e)(1)(E). Plaintiff's contention that the Board has no power to temporarily suspend a county manager is moot because his suspension was with pay and it was superceded by his removal.
Affirmed.
NOTES
[1] This court denied plaintiff's motion for leave to appeal from the denial of his request for temporary injunctive relief.
[2] L. 1981, c. 466, § 1, eliminated the requirement of cause for removal of municipal managers appointed after January 9, 1982.
[3] N.J. County and Municipal Government Study Commission, County Government: Challenge and Change, Second Report, April 28, 1969.