198 N.J. Super. 363 (1985)
486 A.2d 1324
DIVISION OF MOTOR VEHICLES, PETITIONER-RESPONDENT,
v.
ROBERT A. KLEINERT, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted December 10, 1984.
Decided January 23, 1985.
*365 Before Judges KING, DEIGHAN and BILDER.
Darling Jobes and Heyd, attorneys for appellant (Francis P. Crotty, on the brief).
Irwin I. Kimmelman, Attorney General of New Jersey, attorney for respondent (James J. Ciancia, Assistant Attorney General, of counsel, Moira L. Sullivan, Deputy Attorney General, on the brief).
The opinion of the court was delivered by KING, P.J.A.D.
This case involves the question of whether the Director of Motor Vehicles can suspend a driver's license for a conviction for driving while intoxicated in a sister state, Vermont, which is not a signatory to the Interstate Driver License Compact. N.J.S.A. 39:5D-1 et seq. Appellant contends that N.J.S.A. 39:5-30.1[1], L. 1953, c. 429, § 1, impliedly repealed the authority *366 previously granted to the Director in 1921 by N.J.S.A. 39:5-30(a), L. 1921, c. 208, § 6, to suspend driver's licenses for out-of-state motor vehicle violations. N.J.S.A. 39:5-30(a) authorizes the Director to revoke the license of a New Jersey resident for a violation of Title 39 or "on any other reasonable grounds."
We disagree with appellant. This court has consistently held that an out-of-state conviction for driving while under the influence of intoxicating liquor is "any other reasonable ground" justifying revocation. Matter of Kovalsky, 195 N.J. Super. 91 (App.Div. 1984); Tichenor v. Magee, 4 N.J. Super. 467, 471 (App.Div. 1949); see also Bechler v. Parsekian, 36 N.J. 242, 251 (1961); Farrell v. Strelecki, 88 N.J. Super. 221, 222-223 (App.Div. 1965).
We conclude that N.J.S.A. 39:5-30.1, adopted in 1953, four years after our decision in Tichenor v. Magee, was not intended to diminish the powers of the Director to suspend licenses of New Jersey residents convicted of drunken driving in states not signatories of the reciprocal interstate compact. We agree with the Attorney General that N.J.S.A. 39:5-30.1, and also the related N.J.S.A. 39:4-9.1, was intended to establish "machinery for interstate cooperation between New Jersey and other states in the area of motor vehicle violations." The currently extant Interstate Driver Licenses Compact was actually adopted by the Legislature in this State as L. 1966, c. 73, *367 § 1. There are presently 26 signatory states. Vermont is not a signatory state.
Appellant, a resident and licensed driver of New Jersey, was convicted in Vermont of driving while intoxicated upon a guilty plea after a .12 blood alcohol reading. His driving privileges were suspended for one year in Vermont. Although not a member of the Compact, Vermont voluntarily notified the Director of the appellant's conviction and suspension. The Director rejected appellant's contention that his authority to suspend in the circumstance was absent because Vermont was not a participant in the compact and imposed a six-month suspension. See N.J.A.C. 13:19-11.1(a).
We perceive no conflict between the two statutes and reject the notion that passage of N.J.S.A. 39:5-30.1 in 1953 operated as an implied repealer of the Director's power to revoke under N.J.S.A. 39:5-30(a) as authoritatively construed by Tichenor v. Magee in 1949. The available legislative history on section 30.1 reveals no such purpose. The original and final bill, Senate No. 170, was described in the preamble as "supplementing chapter five of Title 39 of the Revised Statutes."
The bill was originally vetoed by Governor Driscoll because the suspension power of the Director was limited to the extent of time of the actual revocation in the sister state where the conviction occurred. The bill in final form, as signed by Governor Driscoll, authorized the Director to suspend for the period for which the driving privilege would have been suspended had a conviction for a like offense occurred in this State.
The Governor's veto message stated in pertinent part our public policy in 1953 on drunken driving
Pursuant to Article V, Section 1, paragraph 14(b) of the State Constitution, I am returning herewith, for reconsideration and with my objections, Senate Bill No. 170.
The general object of this bill is to recognize the grossly unequal penalties which are imposed under laws of the several States for motor vehicle violations where the offense charged is driving under the influence of intoxicating liquor or narcotics. In some States a conviction results in a suspension or revocation of the driving privilege for three months whereas in our own State the period is *368 two years. It is quite apparent that a system of law enforcement must be considered in all its parts, including not only the designation by which an offense is known but also the nature and character of the evidence generally required for a conviction and the severity of the penalty that may be imposed. It is well known that light penalties are apt to promote more numerous convictions, and that offenses of identical designation may in fact imply very different degrees of culpability among the different States.
Our policy of applying the most stringent penalties for driving a motor vehicle while intoxicated should not blind us to the realities of the reciprocal revocation provisions of our law. The present bill goes much too far however by limiting the period of suspension or revocation in this State to the maximum period for which the reciprocity driving privilege was revoked by the State in which the violation occurred. In effect this reduces our penal sanction to the least common denominator of other States. It has always been our policy, however, to lead rather than to follow in the development of laws and administration for safety on the highways. In order to reconcile this policy with the necessities of our reciprocal relations with other States, it is sufficient to give the Director of the Division of Motor Vehicles discretion as to the period of revocation or suspension provided that the period shall not be less than that required by the law of the State where the offense occurred nor more than that required by our State law if the offense had occurred within this State.
The public policy is still strongly viable today. See State v. Dively, 92 N.J. 573, 588 (1983); In re Kallen, 92 N.J. 14, 28 (1983). See also Kelly v. Gwinnell, 96 N.J. 538 (1984).
By providing an efficient method for the revocation of licenses when a driver is convicted of drunken driving in a signatory jurisdiction, we see no legislative intent to compel the Director to ignore such violations in nonsignatory jurisdiction which come to his attention. Indeed, the real distinction between sections 30(a) and 30.1 seems to be that cooperation with nonsignatory states is voluntary, as in the instant case, while cooperation with signatory states by reporting drunken driving convictions and effecting reciprocal penalties therefor is mandatory upon the Commissioner. See N.J.S.A. 39:5D-3; N.J.S.A. 39:5D-4.
Statutes must be construed to yield a reasonable result. Interpretations which lead to absurd or unreasonable results are to be avoided. State v. Gill, 47 N.J. 441, 444 (1966). "[S]o far as the terms of the legislation and proper consideration of the interests of those subject to it will fairly permit, the *369 statutory objection is to be fulfilled." Ibid. See also Loboda v. Clark Twp., 40 N.J. 424, 435 (1963). "The appropriate treatment of statutes depends on how they came to be and what they are for." Easterbrook, "The Supreme Court 1983 Term, Forward, The Court and the Economic System," 98 Harv.L.Rev. 4, 15 (1984).
We reject appellant's claim that the statutes are inconsistent or repugnant and that the newer, allegedly more specific statute, must control over the older, more general, statute. Implied repealers are not favored. Brewer v. Porch, 53 N.J. 167, 173 (1969). Only when a later expression of legislative will is clearly in conflict with an earlier statute on the same subject will courts find a legislative intent to supersede earlier law. Id. at 174-175. Our primary concern is to ascertain legislative intent with reasonable certainty. We are satisfied that N.J.S.A. 39:5-30.1 was intended to be complementary to N.J.S.A. 39:5-30(a), not antithetical to it. We find no evidence in the language, history or logic to suggest that section 30.1 was intended to emasculate the Director's regulatory powers over drunken drivers who commit offenses in our 24 nonsignatory sister states.
Affirmed.
NOTES
[1] N.J.S.A. 39:5-30.1 provides

Whenever the reciprocity driving privilege of any New Jersey resident is suspended or revoked by lawful authority in another State upon a conviction of a violation of the Motor Vehicle Act of such State and the report of such conviction is transmitted by the motor vehicle administrator of such State to the Director of the Division of Motor Vehicles of this State pursuant to any law providing for reciprocal exchange thereof, the director may suspend or revoke the driving privilege of such resident in this State, in the manner prescribed by section 39:5-30 of the Revised Statutes, for a period not less than that for which the reciprocity driving privilege was suspended or revoked in such other State nor more than the period for which the driving privilege would have been suspended or revoked had a conviction of a like offense occurred in this State. [Emphasis added].