NEW JERSEY DIVISION OF MOTOR VEHICLES, APPELLANT,
v. JOSEPH E. EGAN, RESPONDENT.

Argued March 18, 1986—Decided July 15, 1986.

*John P. Bender,* Deputy Attorney General, argued the cause for appellant (*W. Cary Edwards, Jr.,* Attorney General of New Jersey, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel; *Moira L. Sullivan,* Deputy Attorney General, on the brief).

*Michael J. Rowland* argued the cause for respondent (*Einhorn, Harris & Platt,* attorneys).

The opinion of the Court was delivered by

GARIBALDI, J.

This appeal presents two questions. First, whether *N.J.S.A.* 39:5–30.1 confers upon the Director of the Division of Motor Vehicles (Director) the authority to grant occupational driving privileges to a New Jersey licensee when another state has suspended his reciprocity driving privileges but granted him occupational driving privileges. And second, if it does, whether the Director, pursuant to a policy of uniformly imposing the same mandatory minimum suspension penalties that would be applied under New Jersey law for similar offenses, may deny a request for occupational driving privileges without considering each case on its merits.

I

On October 14, 1982, respondent, Joseph Egan, a New Jersey licensee operating a passenger vehicle in Ohio, was charged with drunk driving and refusing to submit to a breath chemical test under that state's implied consent statute, *Ohio Rev. Code*

*Ann.*, § 4511.19.1. On November 18, 1982, the State of Ohio notified respondent of its intention to suspend his reciprocity driving privileges for six months. On Egan's petition, the Clermont County Court of the State of Ohio held a hearing on May 26, 1983. He did not attend that hearing but was represented by counsel. The court suspended respondent's reciprocity driving privileges for six months, but granted him occupational driving privileges under *Ohio Rev.Code Ann.* § 4511.19.-1(G)(5) on the ground that an unconditional suspension would seriously affect his ability to continue in his employment.

Meanwhile, on March 8, 1983, the New Jersey Division of Motor Vehicles (DMV) sent Egan a Scheduled Suspension Notice based on his refusal to submit to a breath chemical test in Ohio. After respondent requested a hearing, the matter was transferred to the Office of Administrative Law as a contested case. The Administrative Law Judge (ALJ) issued an Initial Decision ordering that respondent's driving privileges be suspended for six months and that they not be restored until he successfully completed a program of alcohol rehabilitation or education satisfactory to the DMV. In rejecting Egan's request for occupational driving privileges, the ALJ made two observations: one, that the Ohio statute, unlike New Jersey's implied consent act, explicitly provides for suspensions with occupational driving privileges, and two, that "[a]lthough respondent is no doubt dependent upon the ability to drive for his current employment, the record is devoid of evidence concerning whether or not it is likely he would be fired if his driving privileges are suspended, or the details of his financial status."

Then respondent filed a certification with the Director in support of his exceptions to the Initial Decision of the ALJ. He averred that he is a member of the International Brotherhood of Electrical Workers Union Local 1211 and is currently employed as a semi-truck driver for Columbia Broadcasting Systems Sports Division (CBS Sports). He certified that he is unqualified to act as an electrical worker, and that he was informed by his shop steward that it would be extremely

unlikely, if not impossible, for him to continue with his employment in the event that his driving privileges were suspended, since the only other jobs available through his union were in the capacity of an electrical worker. He received similar advice from the operations manager for CBS Sports.

The Director, in a Memorandum Decision affirming the ALJ's Initial Decision, rejected Egan's entreaty for occupational driving privileges, stating that

the policy of the Division of Motor Vehicles is to impose the same penalty as if the offense had taken place in New Jersey. The purpose is to provide uniformity and equity in the imposition of suspensions of New Jersey licensees for drinking-driving convictions in all states, without regard to the penalties of the state where the alcohol-related offense occurred. Pursuant to the applicable New Jersey statute which was in effect at the time of respondent's arrest, i.e., *N.J.S.A.* 39:4–50.4a, respondent would be subject to a mandatory license suspension of six (6) months for a first offense.

The Appellate Division first affirmed the Director's six-month suspension of Egan's driving privileges and requirement that he attend an alcohol education or rehabilitation program, but then reversed as to Egan's request for occupational driving privileges similar to those given him by Ohio, remanding the matter to the Director for reconsideration in light of the potential that he may lose his job. The court did not retain jurisdiction.

We granted certification, 102 *N.J.* 363 (1985), and now affirm the first part of the judgment of the Appellate Division, but reverse the second part.

## II

The first question is whether the Director has statutory authority to grant occupational driving privileges to New Jersey licensees whose licenses have been suspended in another state. The Director observes that Ohio law explicitly provides for the granting of occupational driving privileges, *Ohio Rev. Code Ann.* § 4511.19.1(G)(5), but that New Jersey law does

not.[1]  *N.J.S.A.* 39:5–30.1, the statute that authorizes the Director to suspend New Jersey driving privileges when reciprocity driving privileges have been suspended in another state, provides that:

> Whenever the reciprocity driving privilege of any New Jersey resident is suspended or revoked by lawful authority in another State upon a conviction of a violation of the Motor Vehicle Act of such State and the report of such conviction is transmitted by the motor vehicle administrator of such State to the Director of the Division of Motor Vehicles of this State pursuant to any law providing for reciprocal exchange thereof, *the director may suspend or revoke the driving privilege of such resident in this State,* in the manner prescribed by section 39:5–30 of the Revised Statutes, *for a period not less than that for which the reciprocity driving privilege was suspended or revoked in such other State nor more than the period for which the driving privilege would have been suspended or revoked had a conviction of a like offense occurred in this State.* [*L.* 1953, *c.* 429, p. 2164, § 1.  Amended by *L.* 1957, *c.* 71, p. 138, § 1.  (emphasis added).]

The Director does not contend that he has no discretion under the statute; the 1957 amendment, substituting the present verb "may" for the original "shall," would refute any such claim.

---

[1]Respondent and the Appellate Division have cited *Fosgate v. Strelecki,* 103 *N.J. Super.* 435 (App.Div.), aff'd o.b., 53 *N.J.* 55 (1968), for the proposition that issuance of occupational driving privileges is not without precedent in New Jersey.  But this case may be the exception that proves the rule.  Fosgate, a Roseland policeman driving a truck while off-duty, was involved in an accident that killed another person.  Although Fosgate was not charged with any violation of the motor vehicle or traffic acts, the DMV found that under the circumstances he was guilty of "careless driving" in violation of *N.J.S.A.* 39:4–97, and therefore suspended his driving privileges for one year.  The court modified the suspension, allowing Fosgate to drive police vehicles in the performance of his duties as a policeman in order that the public interest not suffer by Roseland's loss of a needed policeman at a time when it was difficult to obtain police recruits.

The instant case is readily distinguishable from *Fosgate.*  First, the deterrent purpose of mandatory minimum suspension policies is more systematically pursued, both by the Legislature and the DMV, in drunk-driving cases than in careless driving cases.  Second, there is no indication that Egan, like Fosgate, will be reminded in a rehabilitative manner of the need for highway safety as he drives a truck for CBS Sports.  Nor is there any suggestion that the public interest, as contrasted with Egan's private economic interest, will suffer if the punitive purpose is furthered by suspending his driving privileges for six months.  In short, none of the "complicating factors" that made *Fosgate* special is present here.

But he does maintain that the statute merely gives him discretion to decide whether to impose the convicting state's penalty or that of New Jersey; and he adds that it has been the uniform policy of the Division to impose the same penalty as if the offense had taken place in New Jersey.

■ The Interstate Driver License Compact, *N.J.S.A.* 39:5D-1 to -14, a statute providing for cooperation among states in reporting driving offenses and disciplining licensees, likewise contemplates that the DMV may impose either the penalty of New Jersey or that of Ohio. *N.J.S.A.* 39:5D-4 concerns the action to be taken by the state that issued the license (the home state) when another state reports an infraction:

> (a) The licensing authority in the home State, for the purposes of suspension, revocation or limitation of the license to operate a motor vehicle, shall give the same effect to the conduct reported, pursuant to Article III of this compact, as it would if such conduct had occurred in the home State, *shall apply the penalties of the home State or of the State in which the violation occurred,* in the case of convictions for:
>
> \*       \*       \*       \*       \*       \*       \*       \*
>
> (2) Driving a motor vehicle while under the influence of intoxicating liquor or a narcotic drug, or under the influence of another drug to a degree which renders the driver incapable of safely driving a motor vehicle; ... [*N.J.S.A.* 39:5D-4(a)(2) (emphasis added).]

Hence this statute specifically authorizes the imposition of foreign state penalties for drunk-driving offenses. Although Ohio is not a member of the compact, other states that are members provide for the issuance of occupational licenses for drunk drivers. *See, e.g., Kan.Stat.Ann.* § 8–254, § 8–290; *Wash.Rev.Code,* § 46.20.391. This implicit authority to issue occupational licenses to New Jersey drivers who have received such licenses from "compact states" for drunk-driving violations suggests that the DMV has similar authority for New Jersey licensees who have obtained occupational driving privileges in "non-compact states" for refusing to submit to a breath chemical test.

In sum, under both *N.J.S.A.* 39:5–30.1 and *N.J.S.A.* 39:5D–4 the Director may impose either the penalty of New Jersey or that of Ohio.

## III

The Director contends that even if as an original matter he might have exercised his statutory authority by imposing the penalties of the foreign state, or indeed by considering each case on its merits, he has circumscribed his discretion by developing and acting upon a policy of uniformly imposing the penalty of the home state and thus by imposing mandatory minimum suspensions.[2] Respondent alleges that the 1957 amendment to *N.J.S.A.* 39:5–30.1, giving the Director discretion in making the determination to suspend, was intended to require the Director to consider each case on its merits. We hold that the Director has not abused his discretion by uniformly imposing the penalties of New Jersey.

The Legislature's grant of discretion to the Director, as such, does not preclude him from adopting uniform policies in general nor mandatory minimum suspension policies in particular. In *Cresse v. Parsekian*, 43 *N.J.* 326 (1964), we approved the implementation of reasonably grounded minimum suspension policies as coming within the DMV's statutory authority, stating:

---

[2]The Director, like all good advocates, relies on alternative arguments to sustain his position. Point II of the Director's brief reads:

REGARDLESS OF WHETHER THE DIRECTOR HAS THE AUTHORITY TO ISSUE *WORK LICENSES IN NEW JERSEY*, HE HAS PROPERLY CHOSEN IN THE INSTANT CASE TO IMPOSE NEW JERSEY'S SUSPENSION PERIOD. (Emphasis added.)

Despite the dissent's comment that Point II is a "mild form of dissembling," *post* at 360, the simple words of Point II disclose that the Director knew he had the authority to issue work licenses in New Jersey, but in the exercise of his discretion, he chose not to do so.

This formulation of the Director's contention shows that Justice Clifford's suggestion that the Director was blissfully unaware of (or obstinately refused to recognize) his discretion, *post* at 360, is off the mark.

> While motor vehicle license revocations and suspensions are mainly designed to protect the public by removing the offenders from the road ... they undoubtedly have punitive incidents, as well as deterrent effects which also serve to protect the public. These deterrent effects may well be strengthened by the announcement of minimum suspension policies. So long as the policies are reasonably grounded and formulated they would appear to come within the wide statutory powers vested by our Legislature in the Division of Motor Vehicles. [*Id.* at 328–29 (citations omitted).]

There is no question that the six-month mandatory minimum suspension policy at issue here is reasonably grounded. The Director did not fashion this penalty out of thin air, but drew it from *N.J.S.A.* 39:4–50.4a, where the Legislature has prescribed this very penalty for drunk-driving infractions occurring in New Jersey. It hardly is unfair or an abuse of discretion for the Director to impose the identical mandatory minimum suspension penalty for such offenses occurring out-of-state.

Nor is it an abuse of discretion for the Director, when given a choice between imposing New Jersey's penalty and that of another state, to follow the policy of uniformly imposing New Jersey's more stringent penalty instead of being reduced to "the least common denominator of other States"—for "[i]t has always been our policy ... to lead rather than follow in the development of laws and administration for safety on the highways." So said Governor Alfred E. Driscoll in a letter to the Senate on August 17, 1953, urging passage of the Senate Bill that became *N.J.S.A.* 39:5–30.1. The legislative policy of exacting stringent penalties for drunk-driving offenses has never been stronger. *See Kelly v. Gwinnell,* 96 *N.J.* 538 (1984); *State v. Dively,* 92 *N.J.* 573, 588 (1983); *In re Kallen,* 92 *N.J.* 14, 28 (1983); *Division of Motor Vehicles v. Kleinert,* 198 *N.J.Super.* 363 (App.Div.1985). The Director's administrative policy of imposing these home state penalties furthers this legislative policy.[3]

---

[3]Pursuant to the statutory authority vested in him by *N.J.S.A.* 39:3–11, 39:5–30, 39:5–30.1, 39:5D–4, and 39:5F–1 to –30, the Director subsequent to Egan's conviction adopted regulations embodying this long-standing administrative policy. *N.J.A.C.* 13:19–11.1 provides that out-of-state convictions for

## IV

In conclusion, *N.J.S.A.* 39:5–30.1 gives the Director discretion to impose the penalty respondent would have received had his conviction occurred in New Jersey rather than in another state. And the Director's policy of uniformly imposing New Jersey's mandatory minimum suspension penalties is reasonably grounded and formulated, implementing the Legislature's strong public policy of imposing strict laws relating to drunk driving.

The judgment of the Appellate Division is affirmed in part and reversed in part.

*For affirmance in part and reversal in part*—Chief Justice WILENTZ and Justices HANDLER, POLLOCK, O'HERN and GARIBALDI—5.

*For remandment*—Justices CLIFFORD and STEIN—2.

CLIFFORD, J., dissenting in part.

To dissent in this case is to pick a nit or two. In terms of how the Director of the Division of Motor Vehicles exercises the powers conferred on him by the legislature, however, they may be important nits, so pick them I shall.

I agree with the Court that "the Director has statutory authority to grant occupational driving privileges to New Jersey licensees whose licenses have been suspended in another state." *Ante* at 353. Both *N.J.S.A.* 39:5D–4 and *N.J.S.A.* 39:5–30.1 [1] contemplate that in this case the Director could impose either the penalty of New Jersey or that of Ohio.

refusal to submit to a breath test "shall be given the same effect as if such conviction ... had occurred in this State."

[1] There is a little problem with *N.J.S.A.* 39:5D–30.1, neither raised by the parties nor mentioned by the Court, that the legislature might wish to consider.

If I read the statute correctly, it says that whenever another state suspends or revokes a New Jersey resident's driving privilege, the Director may suspend or revoke that resident's driving privilege in this state "for a period not less than that for which the reciprocity driving privilege was suspended or revoked in

But that is not the way the Director has read the legislation nor the way he has perceived his authority. The Court misstates the Director's position when it says that "[t]he Director does not contend that he has no discretion under the statute [to impose the Ohio penalty of occupational driving privileges only]." That is *exactly* what the Director has contended all along—a position from which he retreated not one inch at oral argument before this Court. Point I of the Director's brief in support of the Petition for Certification reads:

THE DIRECTOR OF THE DIVISION OF MOTOR VEHICLES HAS NO LEGAL DISCRETION OR AUTHORITY PURSUANT TO *N.J.S.A.* 39:5-30.1 TO GRANT OCCUPATIONAL DRIVING PRIVILEGES IN THE STATE OF NEW JERSEY.

In that regard the Director is wrong, as the Court's conclusion today to the contrary—a conclusion in which I join—makes plain.

It is precisely that misapprehension by the Director of the broad scope of his authority that renders unsound the Court's determination, *ante* at 356, that "the Director has not abused his discretion by uniformly imposing the penalties of New Jersey." The problem is that the discretion that the Director sought to exercise was uninformed or, perhaps more precisely, misinformed, in the sense that he failed to recognize the outer

---

such other State nor more than the period for which the driving privilege would have been suspended or revoked had a conviction of a like offense occurred in this State." If Ohio's penalty for refusing a breathalyzer test were a mandatory nine months suspension and New Jersey's were, as it is, a mandatory six months, then it would be impossible to comply with the demands of the statute, read literally—that is, the Director could not impose a suspension of "not less than that for which the reciprocity driving privilege was suspended or revoked" in Ohio (nine months) and at the same time abide by the statute's command that he not exceed New Jersey's six months.

I suppose that it is theoretically possible that no other state permits a period of suspension for any motor vehicle offense greater than that provided for under our own various motor vehicle statutes and that therefore this painfully extended footnote-detour leads only to a dead end. But I think it highly unlikely that there is no offense for which some state's penalty provision is not greater than New Jersey's. The legislature must agree with that speculation—else why the prohibition against exceeding New Jersey's maximum penalty?

limits of his authority. How can we approve a regulator's exercise of discretion when he refuses to consider the full range of options available to him? Surely the Director cannot be said to have exercised his discretion validly in the establishment of a uniform policy when, blissfully unaware of (or obstinately refusing to recognize) his authority to issue a work license, he failed even to consider that available option.

Imaginative formulation or reformulation of the Director's contention, see *ante* at 356, cannot obscure that plain fact, any more than can the Director's attempted after-the-event justification found in the second point of his petition:

REGARDLESS OF WHETHER THE DIRECTOR HAS THE AUTHORITY TO ISSUE WORK LICENSES IN NEW JERSEY, HE HAS PROPERLY CHOSEN IN THE INSTANT CASE TO IMPOSE NEW JERSEY'S SUSPENSION PERIOD.

The contention under that point heading is that "[e]ven assuming, *arguendo*, that the Director has the properly granted statutory authority to issue a work license, *he has chosen not to do so*, but rather to suspend the appellant for that period mandated by *N.J.S.A.* 39:4–50.4a, New Jersey's breath [sic] refusal statute." (Emphasis added.) The majority calls that statement of the Director's position an "alternative" argument, *ante* at 356 n.2. I would call it a mild form of dissembling. No matter; call it what you will, for it simply underscores the point: the Director insists that he *chose* not to do that which at the time he made the choice he verily believed he had *no legal right to do*. Can anyone seriously equate that kind of decision-making with sound and judicious exercise of discretion, achieved only after a thoughtful and deliberate consideration of all available choices?

The point at issue is strikingly similar to the one we thrashed out in an appeal that was argued only the day before this one was and decided but a few short weeks ago, *Gerald v. Commissioner, N.J. Dep't of Corrections*, 102 *N.J.* 435 (1986). There we remanded the cause to the Commissioner of Corrections to afford him the opportunity to reconsider his decision to transfer

the defendant from the Adult Diagnostic and Treatment Center to the state prison. We did so because we were persuaded that "the Commissioner may not have adequately perceived the standards that should have governed his discretion to transfer the respondent from ADTC to the state prison." Accordingly, we held that "[t]he transfer issue in respondent's case should therefore be reconsidered and redetermined in light of the appropriate legal guidelines." *Id.* at 439. Here we need no persuasion that the Director "may not have adequately perceived" his authority—his argument admits it.

Moreover, I do not consider it a satisfactory answer that we "know" what the Director will do because he has already declared an across-the-board policy. We can take judicial notice of the fact that there is a different Director of the Division of Motor Vehicles now from the one who occupied that position at the time the policy under review was set. This one may see things differently. But even if that were not the case, I would remain confident that a principled, conscientious public servant would be willing to rethink a policy that was structured at a time when he was in the dark as to the full extent of his authority. I choose to believe that the Director would scrupulously review the bidding, not simply go through the motions. In a word I would let the Director direct, not do it for him.

I would therefore remand this case to the Director, without retaining jurisdiction, for reconsideration of his uniform policy of imposing New Jersey's mandatory minimum suspension penalties in light of his authority to issue work licenses. Respondent's ultimate fate will turn on how the Division's policy is formulated and how the Director exercises his discretion.