927 A.2d 579

GAIL BROWN, PLAINTIFF–APPELLANT, v. FANNIE Y. WILLIAMS, STANLEY WILLIAMS, AND HOLLY C. BAKKE, COMMISSIONER OF INSURANCE, DEFENDANTS, AND UNSATISFIED CLAIM AND JUDGMENT FUND BOARD, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued November 14, 2006—Decided July 13, 2007.

508

Before Judges KESTIN, PAYNE, and GRAVES.

*Roy H. Mossi* argued the cause for appellant (*Marcus & Levy*, attorneys; *Mr. Mossi*, on the brief).

*John Burke* argued the cause for respondent (*Burke & Potenza*, attorneys; *Benjamin Justus*, on the brief).

The opinion of the court was delivered by

KESTIN, P.J.A.D.

Plaintiff, a pedestrian wholly innocent of fault, was injured on September 10, 2003,* when a parked car backed into her as she was crossing a street at an intersection in Paterson. Defendant Fannie Y. Williams owned the vehicle; defendant Stanley Williams was driving it.

The only motor vehicle insurance coverage available to plaintiff as a result of that accident was a "basic policy" covering the Williams vehicle, issued by Allstate Insurance Company (Allstate). Plaintiff had medical coverage through a Medicaid source, which acquired a lien for any such monies expended. The Allstate policy did not afford liability insurance coverage, but it provided $15,000 in personal injury protection (PIP) benefits to injured pedestrians. Allstate eventually paid the medical expenses incurred by plaintiff up to the $15,000 limit of its policy.

The first count of the complaint in this suit, filed on June 28, 2004, named both Fannie Y. Williams and Stanley Williams as defendants and asserted a general claim for damages. The second count named the Unsatisfied Claim and Judgment Fund (UCJF) and the Commissioner of Insurance as defendants and sought payment of plaintiff's medical expenses. The third count pleaded a general damages claim against the UCJF and the Commissioner. The certification of permanent injury required by the Automobile

---

* Various documents in the record bear a date for the accident of November 10, 2003. We conclude, from our examination of all the documents, that the correct date is September 10, 2003. The discrepancy is of no consequence, however.

Insurance Cost Reduction Act of 1998 (AICRA), *N.J.S.A.* 39:6A–8a, was attached to the complaint.

On September 3, 2004, the New Jersey Property–Liability Insurance Guaranty Association (PLIGA) filed an answer as statutory administrator of the UCJF. The answer contained a general denial and eight separate defenses, including that the suit was barred or limited by the provisions of the Automobile Reparation Reform Act; AICRA; the UCJF Act generally, *N.J.S.A.* 39:6–61 to –90.1; and other statutes cited.

On February 28, 2005, a default was entered against the Williams defendants and, as the result of a proof hearing, a default judgment for a total of $305,286.96 plus post-judgment interest was entered on May 4, 2005, in favor of plaintiff and against the Williams defendants "jointly and severally[.]" The total consisted of "$250,000 for pain and suffering[;] $36,670 for medical bills[,] deductible(s) and co-pay(s) incurred as a result of the subject incident[;] and $14,600 for lost wages plus prejudgment interest in the amount of $4,016.96[.]"

Plaintiff then moved for summary judgment against the UCJF/PLIGA for the payment of medical bills in excess of the $15,000 limit in the Allstate policy. The trial court denied the motion in an order entered July 1, 2005. Thereafter, plaintiff sought to execute on the judgments against the Williams defendants. No assets were found for Stanley Williams, and levy was made on bank account assets in the name of Fannie Y. Williams totaling $4,288.55. Plaintiff then moved for reconsideration of her motion against UCJF/PLIGA. The trial court denied that motion for reasons set forth in an oral opinion.

Based upon a determination that the owner and driver of the vehicle were not uninsured, but rather underinsured, the motion judge held that the statutes governing the UCJF and PLIGA did not cover such a situation, specifically "that plaintiff was not entitled to the [$]250,000 medical expense benefit under PLIGA or the fund law because the tort[]feasors['] policy provide[s] a measure of medical expense coverage[.]" In reaffirming his denial of

plaintiff's PIP claim against UCJF/PLIGA, the judge recognized the "anomalies that exist[,]" and he held that the provisions of AICRA revealed no intention by the Legislature to impose responsibility on UCJF "for claims of non-economic damages of those injured by drivers insured under a basic policy[,]" as distinguished from those injured by uninsured drivers.

On appeal, initially, plaintiff argued in the first point of her brief that the trial court erred in its ruling regarding the availability, in the circumstances, of non-economic damages from UCJF/PLIGA. Specifically, plaintiff contended that the absence of liability coverage in the Williams policy resulted in coverage for plaintiff by UCJF/PLIGA. Prior to oral argument, we were advised that the parties' dispute as to this issue had been settled, subject only to the need for entry of "an 'order to pay' in order to consummate the settlement."

■ We are left, therefore, with the second stated issue on appeal: whether UCJF/PLIGA is responsible for payment of plaintiff's medical bills over and above those paid by Allstate, *i.e.*, the limit of the basic policy it has issued. This dispute between the parties centers about the effective date of *L.* 2003, *c.* 89, § 35, which is codified at *N.J.S.A.* 39:6–86.7, and provides:

> The Unsatisfied Claim and Judgment Fund created pursuant to *P.L.* 1952, *c.* 174 (C. 39:6–61) shall provide personal injury protection benefits pursuant to Section 7 of *P.L.* 1972, *c.* 198 (C. 39:6–86.1) to a pedestrian sustaining bodily injury in this State caused by an automobile, other than to a named insured or a member of the named insured's family residing in his household, if that pedestrian is entitled to personal injury protection coverage under an automobile insurance policy.

*L.* 2003, *c.* 89, was enacted on June 9, 2003. Its last provision, § 86, specifies:

> This act shall take effect immediately, except that section 38 [17:33B–25] shall take effect on January 1, 2004, section 45 [39:6A–3.3] shall take effect on the earlier of the 120th day next following ..., section 65 [17:29A–39] shall take effect upon the adoption of regulations ..., sections 83 [17:17–10] and 84 [17:33B–30] shall take effect on January 1, 2007, and section 79 [39:3–29.1a] shall take effect on 365th day next following enactment.

> [*N.J.S.A.* 39:6–86.7 (Historical and Statutory Notes).]

Plaintiff argues that, by the express provisions of the latter section, which specified the effective dates of various provisions of the enactment, *L.* 2003, *c.* 89, § 35, codified at *N.J.S.A.* 39:6–86.7, became effective on the date of passage, June 9, 2003, and, therefore, governed the accident in question, which occurred on September 10, 2003. UCJF/PLIGA argues that, notwithstanding the facial terms of the statute, policy considerations bearing upon other sections enacted the same day dictate a conclusion that the provision at issue did not become effective until "policies eventually expired after January 1, 2004."

The argument advanced by UCJF/PLIGA is based on a contention that the inherent logic underlying the enactment of *L.* 2003, *c.* 89, as well as the design expressed in identical statements of the Senate Commerce Committee and the Assembly Banking and Insurance Committee, command that result. The essence of the argument that proceeds from this premise is presented by UCJF/PLIGA as follows:

In addition [to the language of the committee statements], as a practical matter, NJPLIGA's obligation was not instituted en masse, but was phased in following the June 9, 2003 effective date of section 86.7. As policies containing provisions affording pedestrian PIP and issued prior to that date expired by their own terms, renewal polic[i]es rewritten without the inclusion of pedestrian PIP replaced them. Thereafter, pedestrians injured by cars insured under the newly written policies could then seek PIP benefits from PLIGA.

In this instance it is undisputed that Allstate paid PIP benefits to the plaintiff in connection with the subject accident, which occurred on November 10, 2003. Allstate is an entity that possesses a great deal of sophistication in the realm of insurance law, as well as a good measure of economic sense. Had Allstate, understanding that PLIGA would be responsible in lieu of itself, thought it legally permissible to stop paying PIP benefits to plaintiff, not to mention all of the other countless pedestrian claimants seeking PIP benefits from it, at the stroke of midnight on June 9, 2003, it certainly would have done so. Therefore, it is not reasonable to argue that Allstate simply paid in error.

Alternatively, it defies logic to conclude that where, as here, a pedestrian was injured by a vehicle insured under a policy written before the effective date of the amendment, that the UCJF was intended to be a source of concurrent or supplemental coverage to that issued by the private insurer. As noted above, the Fund was not intended to serve as a substitute for insurance policies covering New Jersey's motor vehicles, nor to perform the functions of insurance carriers. *See Holmberg v. Aten,* ... 68 *N.J.Super.* [73,] 79 [171 *A.*2d 667] [App. Div.1961]; *Garcia v. Snedeker,* ... 199 *N.J.Super.* [254,] 262 [489 *A.*2d 175] [App. Div.1985].

The joint-coverage situation would defeat the essential compromise wherein the insurers were freed of the obligation of providing pedestrian PIP while PLIGA assumed that obligation but was no longer required [to] reimburse insurers for medical expenses paid in excess of $75,000, as evidenced in the legislative history discussed....

Here, the Williams vehicle was insured by a basic policy which provided pedestrian PIP as required by *N.J.S.A.* 39:6A–3.1, prior to that statute being amended on June 9, 2003. NJPLIGA's responsibility for the payment of pedestrian PIP did not begin until policies providing for pedestrian PIP expired after January 1, 2004. This accident happened in November of 2003 [sic], and the Allstate policy issued to Mrs. Williams, still then in effect and unchanged, provided for pedestrian PIP. Allstate ultimately honored its obligation under that policy. Thus, PLIGA should have had no further obligation than it did before the amendments, and as discussed, ... PLIGA had no such obligation by virtue of the simple operation of *N.J.S.A.* 39:6–86.1.

The argument concludes with the following exhortation:

The trial court understood the mechanics of the statutes involved, and properly ruled that PLIGA had no obligation to afford PIP benefits to plaintiff in addition to that which she recovered from Allstate. * * * This decision should not be overruled.

We are mindful of the wisdom imparted by Judge Learned Hand some sixty years ago: "There is no more likely way to misapprehend the meaning of language—be it in a constitution, a statute, a will or a contract—than to read the words literally, forgetting the object which the document as a whole is meant to secure." *Central Hanover Bank & Trust Co. v. Commissioner,* 159 *F.*2d 167, 169 (2d Cir.1947). The thought has been echoed in our State's decisional law, succinctly summarized in *Longo v. Market Transition Facility of New Jersey,* 326 *N.J.Super.* 316, 741 *A.*2d 149 (App.Div.1999):

In construing a statute, the goal of the court is to ascertain the intent of the Legislature with reasonable certainty. *Division of Motor Vehicles v. Kleinert,* 198 *N.J.Super.* 363, 369, 486 *A.*2d 1324 (App.Div.1985). The source of legislative intent is not limited to the language of the statute. In addition to the wording of the statute, the policy behind it and the legislative scheme of which it is a part, as well as the legislative history and concepts of reasonableness, are essential aids in determining legislative intent. Paramus Substantive Cert. No. 47, 249 *N.J.Super.* 1, 8, 591 *A.*2d 1345 (App.Div.1991); *Coletti v. Union Cty. Bd. of Chosen Freeholders,* 217 *N.J.Super.* 31, 35, 524 *A.*2d 1270 (App.Div.1987). Courts will enforce legislative intent even when it conflicts with the language of the statute. *See Longworth v. Van Houten,* 223 *N.J.Super.* 174, 192–93, 538 *A.*2d 414 (App.Div. 1988). *See also N.J. Builders, Owners and Managers Ass'n v. Blair,* 60 *N.J.* 330,

338, 288 *A.*2d 855 (1972)(holding that "[w]here a literal rendering will lead to a result not in accord with the essential purpose and design of the act, the spirit of the law will control the letter"); *Henry v. Shopper's World,* 200 *N.J.Super.* 14, 18, 490 *A.*2d 320 (App.Div.1985)(holding that "[a] statute must be interpreted sensibly, rather than literally, with the purpose and reason for the legislation being controlling") (citation omitted). As Chief Justice Weintraub recognized long ago:

It is frequently difficult for a draftsman of legislation to anticipate all situations and to measure his words against them. Hence cases inevitably arise in which a literal application of the language used would lead to results incompatible with the legislative design. It is the proper function, indeed the obligation, of the judiciary to give effect to the obvious purpose of the Legislature, and to that end "words used may be expanded or limited according to the manifest reason and obvious purpose of the law. The spirit of the legislative direction prevails over the literal sense of the terms." *Alexander v. New Jersey Power & Light Co.,* 21 *N.J.* 373 378, 122 *A.*2d 339 (1956); *Wright v. Vogt,* 7 *N.J.* 1, 6, 80 *A.*2d 108 (1951); *Glick v. Trustees of Free Public Library,* 2 *N.J.* 579, 584, 67 *A.*2d 463 (1949).

[*New Capitol Bar & Grill Corp. v. Division of Empl. Sec. Dep't of Labor and Ind.,* 25 *N.J.* 155, 160, 135 *A.*2d 465 (1957).]

[*Id.* at 323–24, 741 *A.*2d 149.]

*See also, e.g., Jersey City Chapter Prop. Owners, etc. Ass'n v. City Council of Jersey City,* 55 *N.J.* 86, 100, 259 *A.*2d 698 (1969); *Dvorkin v. Dover Twp.,* 29 *N.J.* 303, 315, 148 *A.*2d 793 (1959).

 As respected and respectable as these approaches may be when construing and applying a statute or other writing, they cannot appropriately be used here. We are not called upon, in this case, to construe arguably ambiguous language, *see, e.g., Dvorkin, supra,* 29 *N.J.* at 314–18, 148 *A.*2d 793; or to apply it to a situation that was not contemplated by the Legislature, in order to avoid a result inconsistent with the overall legislative design, *see, e.g., Jersey City Chapter, supra,* 55 *N.J.* at 99–100, 259 *A.*2d 698; *New Capitol, supra,* 25 *N.J.* at 160, 135 *A.*2d 465; or even to determine whether a "plain language *interpretation* of the statute . . . results in an anomaly," *Longo, supra,* 326 *N.J.Super.* at 322, 741 *A.*2d 149 (emphasis added). There is no room for construing or interpreting here. The Legislature was very precise in § 86 of *L.* 2003, *c.* 89, about the effective dates of various provisions of the overall enactment. Thus, the legislative intent has been clearly stated in the statute itself. Statements of overall policy objectives contained in committee reports cannot supervene the words of the

statute itself, as actually enacted. *See Barnes v. Cohen,* 749 *F.*2d 1009, 1013 (3d Cir.1984)(observing that "if the statutory language is clear, it is not necessary to examine the legislative history").

To the extent the result reached here via application of the plainly expressed terms of the statute seems anomalous in the sense of providing the pedestrian plaintiff with two sources of PIP payment during an interim period, one subject to policy limitations and the other not, there is nothing appropriate we can do to avoid that consequence. Nor can we reach the result proposed by UCJF/PLIGA in the guise of resolving an apparent conflict with the terms of *N.J.S.A.* 39:6–86.1 that antedate the enactment of *L.* 2003, *c.* 89, and assertedly provide for the payment by UCJF of pedestrian PIP claims only when there is no insurance policy covering the accident at issue. *N.J.S.A.* 39:6–86.1, too, was amended in other respects by *L.* 2003, *c.* 89. The Legislature must be taken to have enacted the effective date provisions of § 86 with an awareness of then existing law as well as the other provisions of *L.* 2003, *c.* 89. In any event, the terms of *N.J.S.A.* 39:6–86.1 may well be taken to provide a pedestrian claimant with the statutory coverage to the extent the claim exceeds the limits of any policy in effect. Pedestrian claimants who are not covered under an automobile insurance policy are, by definition, not subject to choices made regarding insurance coverage, as are commonly effected—often in limited amounts—by persons who purchase auto insurance.

It is not our place to assign error to the plain meaning of any enactment, and to become a commission of correction over the precisely declared provisions of a statute. *See DiProspero v. Penn,* 183 *N.J.* 477, 492–93, 874 *A.*2d 1039 (2005). Only where a statute contravenes higher law are courts authorized to engage in judicial surgery and, even then, to exercise the power as sparingly as possible to bring legislative policy into harmony with constitutional values. *See New Jersey State Chamber of Commerce v. New Jersey Election Law Enforcement Comm'n,* 82 *N.J.* 57, 75–76, 411 *A.*2d 168 (1980).

We decline the invitation issued by UCJF/PLIGA to substitute our sense of logic or policy consistency for that of the legislative and executive branches in the expressed terms of a statute duly enacted with their concurrence. We shall not adopt so immodest a view of the judicial role.

The ruling of the trial court is reversed. The matter is remanded for the entry of an "order to pay" both for the purpose of consummating the settlement the parties have reached in one respect, and to effect our declination to assign a different effective date to the duty of UCJF/PLIGA to provide PIP benefits to a pedestrian, *N.J.S.A.* 39:6–86.7, than was specified by the Legislature in *L.* 2003, *c.* 89, § 86.