591 A.2d 1036

DOUGLAS HILL AND CREATIVE HOME DESIGN, INC., PLAINTIFFS–RESPONDENTS, v. ROBERT COLE, BEVERLY LAZOFSON, JOSEPH W. HAFESH, ROBERT POLIN, FRANK D'ELIA, STEWART SPATER AND OCEAN CLUB CONDOMINIUM ASSOCIATION AND RONALD STABLINI, DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued April 30, 1991—Decided June 13, 1991.

Before Judges MICHELS, GRUCCIO and D'ANNUNZIO.

*Jacqueline F. Bunn* argued the cause for appellants (*Mc-Donough, Korn & Eichhorn,* attorneys).

*Arthur L. Shanker* argued the cause for respondents.

The opinion of the court was delivered by

D'ANNUNZIO, J.A.D.

The issue is whether a condominium developer who has sold at least 75% of the condominium units is entitled to vote its remaining units in an election of the governing board of the condominium association.

The facts are not in dispute. The Ocean Club Condominium Association (Association) is the "entity responsible for the administration of" the Ocean Club Condominium located in Atlantic City, New Jersey. *See N.J.S.A.* 46:8B–3b.; *N.J.S.A.* 46:8B–12. The Association is governed by seven trustees. The by-laws provide that three trustees "will be elected by the Unit Owners from the Tower designated as Tower I" and three "Trustees shall be elected by Unit Owners from ... Tower II, and one (1) Trustee at large will be appointed by the Grantor." This system of electing trustees was to become operative "[w]hen Unit Owners other than the Grantors own 544 apartments." There are 725 residential units in the project; 544

units is 75% of the total units. Prior to 1990, at least 75% of the units had been sold by the developer. During the period relevant to the election at issue in this case, "the developer held approximately fifty units for sale in the ordinary course of business."[1]

Plaintiff, Douglas Hill, is an officer and sole shareholder of plaintiff Creative Home Design, Inc., the owner of a unit in Tower I. Hill ran for a seat on the board of trustees at the annual election on August 19, 1990. There were three other candidates seeking election as Tower I's three representatives on the board. Robert Cole, Beverly Lazofson and Stewart Spater received the most votes if the developer's votes were not considered. However, Hill was elected to the board if the developer's votes were considered. The voting for Tower I was reported by the election auditor as follows:

|  | Without Developer's Votes | With Developer's Votes |
| --- | --- | --- |
| Robert Cole | 1,730 | 1,960 |
| Douglas Hill | 1,082 | 1,312 |
| Beverly Lazofson | 1,237 | 1,237 |
| Stewart Spater | 1,293 | 1,293 |

The auditor disregarded the developer's votes and certified Cole, Lazofson and Spater as the winners. The Tower II election was not contested.

Plaintiffs commenced this action in the Chancery Division for injunctive relief, a judgment that the developer's votes were valid and for other ancillary relief. The facts not being in dispute, the Chancery Division judge decided the issue on the papers submitted. A judgment was entered in favor of plaintiffs determining that the developer's votes should have been counted and that Hill won a seat on the board. Defendants now appeal from that judgment.

The narrow issue is whether the developer, in addition to appointing one member of the seven-member board, is enti-

---

[1]Plaintiff–Respondents' brief, p. 5.

tled to cast votes, represented by the 50 units it continues to hold, in the election of the remaining six trustees. Resolution of that issue is found in *N.J.S.A.* 46:8B–12.1a. (hereafter § 12.1) which provides:

> a. When unit owners other than the developer own 25% or more of the units in a condominium that will be operated ultimately by an association, the unit owners other than the developer shall be entitled to elect not less than 25% of the members of the governing board or other form of administration of the association. Unit owners other than the developer shall be entitled to elect not less than 40% of the members of the governing board or other form of administration upon the conveyance of 50% of the units in a condominium. Unit owners other than the developer shall be entitled to elect all of the members of the governing board or other form of administration upon the conveyance of 75% of the units in a condominium. However, when some of the units of a condominium have been conveyed to purchasers and none of the others are being constructed or offered for sale by the developer in the ordinary course of business, the unit owners other than the developer shall be entitled to elect all of the members of the governing board or other form of administration. Notwithstanding any of the provisions of subsection a of this section, the developer shall be entitled to elect at least one member of the governing board or other form of administration of any association as long as the developer holds for sale in the ordinary course of business one or more units in a condominium operated by the association.

The trial court interpreted the statute [2] as shifting control of the Association to the unit owners other than the developer, but not disenfranchising the developer. We conclude that the trial court erred.

In construing a statute we must give effect to the Legislature's intent. *Monmouth Cty. v. Wissell,* 68 *N.J.* 35, 43, 342 *A.*2d 199 (1975). Statutory language and the statute's underlying policy and purposes are sources of statutory intent. *Airwork Serv. Div. v. Director, Div. of Taxation,* 97 *N.J.* 290, 296, 478 *A.*2d 729 (1984); *Coletti v. Union Co. Bd. of Freeholders,* 217 *N.J.Super.* 31, 35, 524 *A.*2d 1270 (App.Div.1987); *Shapiro v. Essex Cty. Freeholder Bd.,* 177 *N.J.Super.* 87, 92–93, 424 *A.*2d 1203 (Law Div.1980), *aff'd,* 183 *N.J.Super.* 24, 443 *A.*2d 219 (App.Div.), *aff'd,* 91 *N.J.* 430, 453 *A.*2d 158 (1982). More-

---

[2]Regulations adopted by the Department of Community Affairs are substantially consistent with § 12.1. *See N.J.A.C.* 5:26–8.4.

over, "statutes are to be read sensibly rather than literally and the controlling legislative intent is to be presumed as 'consonant to reason and good discretion.'" *Schierstead v. Brigantine*, 29 *N.J.* 220, 230, 148 *A.*2d 591 (1959) (citations omitted). And "where a literal reading of the statute leads to absurd consequences 'the court must restrain the words' and seek the true legislative intent." *Id.* at 231, 148 *A.*2d 591 (citing *In re Merrill*, 88 *N.J.Eq.* 261, 102 *A.* 400 (Prerog.Ct.1917)). In construing a statute, we assume that the Legislature intended a reasonable approach, and the statute should be construed to effect a reasonable approach. *Roman v. Sharper*, 53 *N.J.* 338, 341, 250 *A.*2d 745 (1969).

We agree with the trial court that § 12.1's purpose is to shift control from the developer to the unit purchasers. The statute achieves its purpose through the use of a common sense method which dilutes the developer's power to vote as units are sold. The language of § 12.1 is relatively clear. When at least 25% of the units have been sold "unit owners *other than the developer* shall be entitled to elect not less than 25%" of the Association's board of trustees. [Emphasis added.] The statute reserves exclusively to the unit purchasers the right to vote for a portion of the board constituting not less than 25% of the board.[3] If, despite the sale of 25% of the units, the developer were allowed to vote for the reserved 25% of the board, as the trial court ruled, then the developer would perpetuate total control of the board because the developer would continue to hold approximately 75% of the units. The same anomaly could occur upon conveyance of 50% of the units if the unsold units have more than 50% of the votes.[4] Thus, the trial court's ruling

---

[3]Prior to sale of 75% of the units, the board consisted of five members and, therefore, the unit owners were entitled to elect one trustee upon sale of at least 25% of the units.

[4]Condominium voting is not necessarily on the basis of equal votes per unit. For example, the Ocean Club's master deed provides:

that the developer has a continuing right to vote its unsold units for all board candidates obstructs the legislative intent by impeding the gradual and measured shift of control to the purchasers.

■■ Plaintiffs' contention that the developer has voting rights, under *N.J.S.A.* 15A:5-10, as a member of a nonprofit corporation is without merit. That statute provides that "the right of the members ... to vote may be limited, enlarged or denied to the extent specified in the certificate of incorporation or by laws ..." and "unless so limited, enlarged or denied, each member ... shall be entitled to one vote on each matter submitted to a vote of members." Surely, if the right to vote may be limited in the certificate or bylaws, then the Legislature has the power to limit voting rights in legislation governing specific and specialized subjects. *Cf. W. Kingsley v. Wes Outdoor Advertising Co.*, 55 *N.J.* 336, 339, 262 *A.*2d 193 (1970) (in the event of conflict between a general and specific act the specific act prevails). Although the master deed defines the phrase "unit owner" as "including the Grantors (developer) unless the context expressly indicates otherwise," we perceive no conflict between § 12.1 and the master deed or by-laws. In this case, the "context" is voting rights in board elections which is governed by § 12.1. Consequently, under the master deed definition, the developer would not be a "unit owner" for that purpose. Moreover, to the extent that the master deed or by-laws conflict with § 12.1, the statute prevails.

---

8. Voting Rights of Unit Owners. The voting rights of Unit Owners shall be computed on the basis of each Unit Owner's Common Interest in the Common Elements. The number of votes which each Unit shall be entitled to cast in any of the affairs of the Association requiring a vote shall be equal to the respective figure shown opposite each unit in Exhibit "C" hereof (representing the percentage of Common Interest in the Common Elements), multiplied in each case by 100, thereby resulting in 10,000 votes in the aggregate.

Consequently, 50% of the units may hold more than 50% of the voting power.

We recognize, as did the trial court, some ambiguity in the second paragraph of § 12.1a. It provides that "the developer shall be entitled to elect at least one member of the governing board." It can be argued that use of the phrase "at least" suggests that a developer may be entitled to greater representation on the board than one trustee. However, that issue is not before us because *N.J.A.C.* 5:26–8.4(b) and the by-laws provide for one "trustee at large" to be appointed by the developer when 75% of the units have been sold. The ambiguity in the second paragraph of § 12.1a does not affect our conclusion that the developer's votes were not to be counted in the election at issue and that plaintiff, Douglas Hill, was not elected to the board.

Reversed.