**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2154-19

MICHAEL VOLOVNIK,
PEOPLEMOVER, LLC, and
RE-HOLD, INC., as unit owners
and derivatively on behalf of
Bridge Plaza Condominium
Association, Inc., and all other
Bridge Plaza unit owners
similarly situated,

     Plaintiffs-Appellants,

v.

BRIDGE PLAZA
CONDOMINIUM
ASSOCIATION, INC.,

     Defendant-Respondent,

and

IGOR TROGAN, DAVID
MORAN, MARC FEINGOLD,
ERNEST LEVA, MELIORA
INVESTMENTS, LLC,
DOUGLAS BLOCK, SYDNEY
B. REALTY, LLC, and CRAM IT,
LLC,

Defendants,

and

BRIDGE PLAZA
CONDOMINIUM
ASSOCIATION, INC.,

    Third-Party Plaintiff,

v.

EVEREST HEATING &
COOLING, LLC, a/k/a EVEREST
CONSTRUCTION, LLC,

    Third-Party Defendant.

    Submitted February 24, 2021 – Decided May 11, 2021

    Before Judges Fuentes and Rose.

    On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-4593-17.

    Rutter & Roy, LLP, attorneys for appellants (Richard B. Tucker, Jr., of counsel and on the briefs).

    Ansell Grimm & Aaron, PC, attorneys for respondent (David J. Byrne, on the brief).

PER CURIAM

In this commercial condominium dispute, Michael Volovnik, and his sole

proprietorships, Peoplemover, Inc., and Re-Hold, Inc., (collectively, plaintiffs),

appeal from a series of Law Division orders that culminated in the dismissal of their litigation and a fee award in favor of defendant Bridge Plaza Condominium Association, Inc. (Association).  More particularly, plaintiffs appeal from orders entered on:  (1) April 13, 2018, dismissing counts one, three, and four of their first amended complaint on equitable estoppel grounds; (2) May 25, 2018, awarding defendant attorneys' fees and costs, and denying plaintiffs' motion for reconsideration of the April 13, 2018 order; (3) January 18, 2019, granting summary judgment to defendant on count six of plaintiffs' third amended complaint, and denying plaintiffs' cross-motion on that count; (4) May 31, 2019, granting summary judgment in favor of defendant on counts three and four of plaintiffs' third amended complaint, and denying plaintiffs' cross-motion on those counts; and (5) July 19, 2019, denying plaintiffs' motion for reconsideration of the May 31, 2019 orders.  Because the allegations raised in plaintiffs' complaint were raised – or could have been raised – in the parties' prior litigation, we affirm all orders under review.

I.

The parties have a long litigious history, which is accurately summarized in the decisions that accompany the Law Division orders.  We also incorporate by reference the relevant facts and procedural history set forth at length in our

prior consolidated opinion, affirming certain orders as summarized below. Trogan v. Volovnik, No. A-1773-13, and Leva v. Volovnik, No. A-1774-13 (App. Div. Jan. 21, 2015). We highlight those facts and events that are pertinent to our analysis.

Plaintiffs own twelve of thirty-three units located in the Bridge Plaza Condominium Complex (Complex) in Manalapan. More than two decades ago in 1998, Volovnik developed the Complex, assumed the role of sponsor of the Association, and served as its president and a member of its Board of Directors (Board) until 2013. Later that year, Volovnik and other members of the Board unanimously voted to amend the Association's By-Laws, dispensing with its annual audit requirement. Instead, the audits would occur "[o]nly upon request" of "an entitled party," including unit owners, at the requesting party's expense.

In January 2012, the Board adopted a parking resolution, which designated a series of new parking rules including the allotment of "[four] parking spaces per every 1000 square feet of unit space." The Board further established a monetary fine for violation of those rules.

In June 2012, Igor Trogan and seven other unit owners (Trogan plaintiffs), individually, and derivatively on behalf of the Association, sued Volovnik and the remainder of the Board (Trogan litigation). Among other allegations, the

Trogan plaintiffs claimed the Board failed to hold elections and conduct public meetings as required by the Association's By-Laws. The Trogan plaintiffs also challenged the legality of the Board's parking regulations.

In May 2013, the parties executed a settlement agreement, thereby resolving the Trogan litigation.

> In pertinent part, the settlement provided that the Board would hold elections within sixty days, at which the non-sponsor unit owners would elect four directors, with Volovnik retaining control of one board seat as sponsor. The settlement also provided that the Board would "forgiv[e] and/or cancel[] all fines issued to [p]laintiffs for violation of the Association's rules." The parties also agreed, "as a material term of th[e] Settlement Agreement[,] that they [would] comply with all existing parking rules and regulations," they would be limited to four parking spaces per 1000 square feet of space owned or occupied, and they would utilize only spaces in front of, or on the side of, the building in which their unit was located. In this regard, the settlement specifically fixed the penalties the Association would impose if "any party . . . violate[d] the parking rules and regulations."
>
> [Id. at 4.]

In the interim, the Association held an election, but Volovnik and the remainder of the outgoing Board refused to certify the results, and filed a motion to vacate the settlement agreement. Newly-elected Board member Ernest G. Leva instituted a declaratory action in the Chancery Division against Volovnik

5

and the holdover Board (Leva litigation), seeking to confirm the election results. On October 29, 2013, the General Equity judge entered an order certifying the results of the election, and denied Volovnik's motion to vacate the settlement agreement. In a consolidated appeal, we affirmed the October 29, 2013 orders. Id. at 13.

The following month, in November 2013, the Association filed an order to show cause and verified complaint against Volovnik.[1] Among other relief, the Association sought to prevent the conversion of funds "collected for or on behalf of the Association." (Turnover litigation). In response, Volovnik filed counterclaims, seeking to rescind the settlement agreement. Volovnik asserted the Association violated the parking rules and regulations and, as such, the Association repudiated the settlement agreement and breached its terms. Volovnik also alleged the Association thereby committed fraud and breached its fiduciary duty. In his second amended counterclaim, Volovnik averred that the Association's failure to enforce the parking rules and regulations interfered with Re-Hold's ability to rent its 6300 square-foot building unit.

---

[1] The complaint also was filed against Re-Flex, U.S.A, Inc., which was owned by Volovnik and served as the Association's prior management company when Volovnik controlled the Board.

A-2154-19

In July 2017, a jury rendered a verdict in favor of the Association, awarding no damages on Re-Hold's claim for lost rent. Thereafter, the trial judge dismissed Volovnik's equitable claim for recission of the settlement agreement, apparently finding the agreement was valid and enforceable. Later, in August 2018, Volovnik sought enforcement of the settlement agreement but another judge denied the motion, finding the agreement settled "a different action," i.e., the Trogan litigation, which was not the subject of the jury trial.

Against that protracted litigation, we turn to the relevant allegations that give rise to the present appeal. In February 2018, plaintiffs as unit owners and derivatively on behalf of the Association and similarly-situated unit owners, filed a nine-count first amended verified complaint against the Association and other parties,[2] seeking declaratory relief to: inspect the Association's books and records regarding legal expenses incurred in the prior litigation; establish Volovnik's rights as a member of the Board; invalidate a 2017 special assessment inapplicable to plaintiffs; permit plaintiffs to display "For Sale" signs in the Complex's common areas; and call a special meeting of the unit

---

[2] Plaintiffs also filed their complaint against some of the Trogan plaintiffs, Leva, and other individuals and entities, all of whom have been dismissed from the litigation and are not parties to this appeal. We confine our review to the decisions pertaining to the Association's motions.

A-2154-19

owners. Plaintiffs' complaint also alleged breach of fiduciary duty for: discriminatory maintenance of the Complex's common areas; failure to enforce the parking resolution; and wasting of Association funds. Finally, plaintiffs sought damages for breach of contract.

In lieu of answer, the Association moved to dismiss the complaint pursuant to Rule 4:6-2(e). The Association argued plaintiffs' action was barred by the entire controversy doctrine, plaintiffs failed to satisfy financial obligations imposed by prior court orders, and plaintiffs lacked standing to call for a special meeting to remove certain Board members.

Following argument on April 13, 2018, the motion judge rendered a cogent oral decision granting in part, and denying in part, the relief requested by the Association. The judge dismissed with prejudice plaintiffs' claims based on the failure to enforce the parking resolution and breach of contract, and their demand to inspect the Association's books and records.

Citing our decision in Camden County Energy Recovery Associates L.P. v. New Jersey Department of Environmental Protection, 320 N.J. Super. 59, 64 (App. Div. 1999), the judge correctly iterated his "obliga[tion]" under Rule 4:6-2(e) "to search the complaint in depth and with liberality to ascertain whether the fundament of the cause of action may be gleaned, even from an obscure

statement or claim" with the opportunity to afford an amendment, "if necessary." The judge then summarized the legal principles underpinning the entire controversy doctrine, established by case law and set forth in Rule 4:30A.

Accordingly, the motion judge cited Cogdell v. Hospital Center at Orange, in which the Court recognized "the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy." 116 N.J. 7, 15 (1989). Citing the Supreme Court's decision in Watkins v. Resorts International Hotel & Casino, 124 N.J. 398, 412 (1991), the judge also recognized New Jersey law requires three basic elements for res judicata to apply. Pursuant to Watkins,

> (1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one.
>
> [Ibid.]

With respect to plaintiffs' demand to examine the Association's books and records, the motion judge recognized the Complex's governing documents "in part" supported plaintiffs' argument that they were not liable for legal expenses incurred in the prior litigation. But the judge concluded "there [wa]s no

9

evidence in the record" that plaintiff instituted "the claim . . . during the prior litigation, despite . . . having [the] full opportunity to do so."  Instead, "the record plainly establish[ed] that numerous judgments" for counsel fees were awarded in favor of the Association.  The judge further determined discovery was not necessary "to support the validity of such expenses."

The motion judge dismissed plaintiffs' failure to enforce the parking resolution and breach of contract claims under the same doctrine.  In doing so, the judge rejected plaintiffs' argument that the violations asserted in their complaint arose after resolution of the prior litigation.  On the contrary, the judge found the allegations arose "from the same transactional events which were previously disposed of [at trial] and, thus, the relief sought cannot be provided."

Thereafter, the same judge granted the Association's ensuing motion for attorneys' fees and costs incurred for filing its April 13, 2018 motion to dismiss, pursuant to Rule 1:4-8 and N.J.S.A. 2A:15-59.1.  In an oral decision, the motion judge noted the Association duly sent plaintiffs a frivolous litigation letter advising that the allegations in their complaint were barred by the doctrines of res judicata and collateral estoppel.  The judge concluded plaintiffs "were fully aware of the previous orders and rulings on the parking resolution, yet continued

forward with this litigation." The judge also found the amount of counsel fees and expenses requested was reasonable. On the same day, the judge also denied plaintiffs' motion for reconsideration of the April 13, 2018 order.

On September 19, 2018, plaintiffs filed a six-count third amended complaint. Only counts three, four, and six are pertinent to this appeal. In count three, plaintiffs alleged they were not required to contribute to the payment for the Association's siding replacement project. In count four, plaintiffs asserted the Association was required to perform an annual audit of its books and records and demanded an audit for 2017. In count six, plaintiffs demanded a special meeting of unit owners to vote on the removal of the Board members.

On November 9, 2018, the Association moved for partial summary judgment on count six, in which plaintiffs alleged the Association ignored their written request for a special meeting under Article III, Section 3 of the By-Laws. That provision mandates a special meeting of unit owners "upon the written request of [m]embers representing not less than twenty-five . . . percent in interest of all the votes entitled to be cast at such meeting."

Relying on N.J.S.A. 46:8B-12.1, and our interpretation of that statute in Hill v. Cole, 248 N.J. Super. 677 (App. Div. 1991), the Association argued Volovnik, as the Complex's sponsor, was not permitted to vote on replacement

Board members and, as such, Volovnik's companies, Peoplemover and Re-Hold, could not request a special meeting to remove the four remaining non-sponsor members. Plaintiffs cross-moved for the right to call the special meeting and to vote to remove the existing Board members.

During oral argument on January 18, 2019, another judge (second motion judge) framed the issues as whether a sponsor was entitled to call a special meeting "wearing [his] unit owner hat" and, if so, whether the sponsor was entitled to vote to remove members of the Board when the sponsor was not entitled to vote on new members of the Board. Following argument, the judge reserved decision to, among other things, review the April 13, 2018 transcript of the initial motion judge's decision that denied the Association's motion to dismiss count six.

On January 25, 2019, the judge rendered a decision from the bench concluding the Association's By-Laws barred Peoplemover and Re-Hold – as owners of more than twenty-five percent of the Complex's units – from voting to call a special meeting for the purpose of "vot[ing] out the current board members other than Mr. Volovnik" as the Complex's sponsor. The judge was persuaded that our decision in Hill constrained plaintiffs from calling a meeting to oust Board members that the sponsor was not permitted to elect.

As the judge explained, "[t]he [sponsor] is not permitted to control who's on the Board by picking them[, and ] can't control who's on the Board by kicking them off, either." In reaching her decision, the judge recognized the sponsor was permitted to retain units in the Complex and "as thirty-percent owner[s]" plaintiffs were "allowed to call for a special election" but "they [we]re not allowed to call for a . . . special election for the purpose of getting rid of the other Board members."

On March 1, 2019, the Association moved for partial summary judgment on the third and fourth counts of plaintiffs' third amended complaint. As to count three, the second motion judge framed the issue as "whether the siding project should be categorized as a capital improvement," which required approval of two-thirds of the Complex's unit owners. Or whether the project was simply a replacement of "existing common elements." The judge determined the siding project "was not a capital improvement" because it "merely replaced the wood siding already in existence with siding of a different material" and "did not add anything to the condominium unit" that was not originally a part of the structure. The judge therefore concluded plaintiffs, as unit owners, were required to contribute to the funding of the project.

13

As to count four, the second motion judge recognized the Association's By-Laws were amended by a "unanimous vote" in 1998 – when Volovnik was a Board member – to limit annual audits only "upon request from an entitled party." The judge further noted: "In 2012, in response to a request from unit owners for copies of any audits performed by the Association, counsel for Volovnik cited the 1998 meeting in which the By-Law amendment was enacted, in stating that the requesting owners had to bear the costs of the audit."

The judge therefore found untenable plaintiffs' present position that "the amendment was merely discussed and never formally enacted." The judge elaborated:

> Plaintiffs' argument that the amendment was merely discussed and never formally enacted is simply unsustainable in light of plaintiffs' prior representations that the amendment was enacted. Plaintiffs cannot use the adoption of the amendment as a shield in one circumstance where it benefits them, and then as a sword in arguing that a formal amendment of the By-Laws never actually occurred. Plaintiff Volovnik had actual knowledge that the sponsor-controlled Board unanimously agreed to enact the amendment to the By-Laws to require the requesting party to bear the costs of an audit, as he himself was a voting director in the decision to amend the By-Laws. The sponsor-controlled board and then Volovnik's own counsel cited this amendment and the specific meeting in which the amendment was enacted, in response to inquiries by others regarding the performance of an audit on the Association's books.

14

Based on the foregoing history, it is clear that the Board voted to change the By-Laws to require the requesting party to bear the costs of an audit. The failure to actually change the text of the By-Laws following the amendment must thus be seen as nothing more than a ministerial error, and has no effect on the fact that the By-Laws were in fact substantively amended.

Moreover, if Volovnik knew that the amendment to the By-Laws had never been formally enacted, yet still asserted the position that such amendment had occurred, then under the doctrine of unclean hands, plaintiffs cannot now come before this court to seek an equitable remedy. See Pellitteri v. Pellitteri, 266 N.J. Super. 56, 65 (App. Div. 1993) ("The doctrine of unclean hands embraces the principle that a court should not grant equitable relief to a party who is a wrongdoer with respect to the subject matter of the suit. It calls for the exercise of careful and just discretion in denying remedies where a suitor is guilty of bad faith, fraud or unconscionable acts in the underlying transaction.").

On the other hand, if Volovnik had simply forgotten about the amendment, or mistakenly thought that the subject By-Laws provision had not in fact been amended, then his representations over the past several years that the By-Laws had been amended, would estop plaintiffs from arguing to the contrary.

The judge then aptly quoted our decision in Talcott v. Fromkin Freehold Associates, 383 N.J. Super. 298, 315-16 (App. Div. 2005) regarding the doctrine of equitable estoppel.

15

On May 31, 2019, the judge entered orders granting the Association's motions for summary judgment on counts three and four of plaintiffs' third amended complaint, and denying plaintiffs' cross-motions for summary judgment on those counts. On July 19, 2019, the second motion judge denied plaintiffs' motion for reconsideration of the May 31, 2019 orders, concluding the motion was premised merely on plaintiffs' dissatisfaction with the court's orders.

On appeal, plaintiffs reprise the arguments raised before the Law Division, arguing the judges erroneously: (1) dismissed counts one, three and four of their first amended verified complaint under the doctrine of equitable estoppel, and denied reconsideration of that decision; (2) awarded the Association a sanction fee; and (3) dismissed counts three, four, and six of plaintiffs' third amended complaint on summary judgment and denied their cross-motions.

We have carefully considered plaintiffs' contentions in view of the applicable law, and conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We affirm substantially for the reasons expressed by the motion judges in their well-reasoned decisions. We add only the following remarks.

16

Similar to the initial motion judge, we reject plaintiffs' contentions that the allegations raised in counts one, three, and four of the first amended verified complaint arose after the prior litigation was resolved. In count one, plaintiffs challenge the legal expenses incurred in relation to the Turnover litigation. However, the issue of legal expenses was addressed by the court during the course of the Turnover litigation, as evidenced by the court orders in that action. In count three, plaintiffs allege the Association's parking regulations have been violated, and attempt to distinguish these allegations from those made in the prior matters concerning the parking violations by asserting that violations were still occurring. However, the violations alleged in count three of the complaint are not limited to those that occurred after the prior litigation, but rather are described as violations that have been occurring since the regulations were instituted. Plaintiffs' parking-related claims were addressed and disposed of in the Trogan and Turnover litigations where no violations were found.

In count four, plaintiffs contend the settlement agreement has been violated, particularly concerning the parking-related provisions. As with count three, the violations alleged in count four are not limited to those that occurred after the prior litigation, but rather are described as violations that have occurred "[a]t all times after the [s]ettlement [a]greement was entered into." Similar to

the claims asserted in count three, the alleged violations of the 2013 Settlement were fully addressed and disposed of in the Trogan and Turnover litigations. Having employed the same standard as the trial court, Donato v. Moldow, 374 N.J. Super. 475, 483 (App. Div. 2005), we likewise conclude dismissal was appropriate here on the grounds of equitable estoppel.

Further, we have reviewed de novo the second motion judge's decisions on summary judgment, Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016), and likewise conclude dismissal of counts three, four, and six of plaintiffs' second amended complaint was warranted. We add the following comments as to count six.

On appeal, plaintiffs contend Volovnik is not the Complex's sponsor or developer. They argue the inability of Peoplemover and Re-Hold to vote in the 2013 transition Board election does bar them from voting in any "subsequent special meeting to remove board members." The Association counters that Peoplemover and Re-Hold are, collectively, the Association's sponsor and Volovnik is the sponsor's appointed Board member. The Association maintains the sponsor cannot call a special meeting to vote to remove members of the Board whom the sponsor was "unable to elect in the first place."

Article III, Section 3 of the Association's By-Laws permits unit owners to call a special meeting if they represent a combined twenty-five percent interest in in the Complex. Peoplemover and Re-Hold, as owners of twelve of thirty-three units, fall within that category. As the second motion judge recognized, however, pursuant to the terms of the settlement agreement the parties agreed that Volovnik, as sponsor "retain[ed] the right to appoint one member to the Board" but was "not eligible to cast a vote in the election of the remaining four members of the Board" who must "be elected by the non-sponsor owners."

In Hill, we addressed whether a developer, "in addition to appointing one member of the seven-member board, [wa]s entitled to cast votes, represented by the [fifty] units it continue[d] to hold, in the election of the remaining six trustees." 248 N.J. Super. at 680-81. We concluded this issue was encompassed within N.J.S.A. 46:8B-12.1(a), which provides:

> When unit owners other than the developer own 25% or more of the units in a condominium that will be operated ultimately by an association, the unit owners other than the developer shall be entitled to elect not less than 25% of the members of the governing board or other form of administration of the association. Unit owners other than the developer shall be entitled to elect not less than 40% of the members of the governing board or other form of administration upon the conveyance of 50% of the units in a condominium. Unit owners other than the developer shall be entitled to elect all of the members of the governing board or

other form of administration upon the conveyance of 75% of the units in a condominium. However, when some of the units of a condominium have been conveyed to purchasers and none of the others are being constructed or offered for sale by the developer in the ordinary course of business, the unit owners other than the developer shall be entitled to elect all of the members of the governing board or other form of administration.

In Hill, we agreed with the trial court's finding that the statute's "purpose is to shift control from the developer to the unit purchasers." 248 N.J. Super. at 682. However, we found "the trial court's ruling that the developer has a continuing right to vote its unsold units for all board candidates obstructs the legislative intent by impeding the gradual and measured shift of control to the purchasers." Id. at 682-83.

It follows from Hill that where a sponsor-developer, such as Volovnik, is prohibited from voting to elect new board members, the sponsor is therefore prohibited from voting to remove board members. To allow Peoplemover and Re-Hold to call a special meeting for the purpose of removing Board members would contravene the applicable governing documents and our decision in Hill. We therefore discern no reason to disturb the second motion judge's decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2154-19